**American Civil Liberties Union of Oregon v. ICE**
No. 18-cv-00247 (D. Or., filed Feb. 7, 2018)
U.S. Immigration and Customs Enforcement *Vaughn* Index

| CHALLENGED RECORDS (FIRST SET)[1] | | | |
|---|---|---|---|
| Bates Stamp Page # | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
| All[2] | Partial | **Redacted Information:** These pages contain emails between Immigration and Customs Enforcement ("ICE") employees and/or other law enforcement employees; rosters from correctional institutions; and documents created by law enforcement officials regarding aliens present in the United States. Many of these pages contain personally identifiable information ("PII") of employees (including their names and contact information such as phone number and/or email address). These pages also contain PII (including but not limited to: names, biometric information, contact information, immigration history, and/or other identifying information) of third-party individuals. This information was withheld throughout the document set under FOIA exemptions (b)(6) and (b)(7)(C). Plaintiff is not contesting this information. Additionally, contextual information around the PII that could be used to identify a third party was withheld, as that information could be used in conjunction with information found online, news stories, and other forms of media and internet information to breach personal privacy.

**Reason for Redactions:** Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names and contact information of ICE and law enforcement personnel could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.

Similarly, under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names, biometric information, contact information, immigration history, and/or other identifying information of third-party individuals could reasonably be expected to constitute an unwarranted invasion of these individuals' personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |

[1] Please note that any pages specified for this sample by Plaintiff that are not included in this Vaughn index were re-processed and re-released with scaled-back redactions that eradicated any challenges. The reprocessed pages were released to Plaintiff prior to this filing.
[2] Please note that Plaintiff specifically stated that they "do[] not challenge the redactions of names or other similar identifying information withheld under exemptions b(6) or b(7)(C), but does challenge the use of those exemptions where used to redact additional information." ICE assumes that the Plaintiff is referring to contextual information, referenced above.

| | | | |
|---|---|---|---|
| | | being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.  Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.  Finally, the third parties identified in the records have not consented to the disclosure of their PII. | |
| 1400 | Partial | **Document Title**: Email titled "RE: [Name] SID #[Number] DOB [DOB]" "[3]<br><br>**Document Description:** This document contains emails between an Enforcement and Removal Operations ("ERO") officer and a Release Counselor from the Santiam Correctional Institution (please note that this information is located in the signature block) about ICE's interest in a state inmate.<br><br>**Redacted Information:** One sentence regarding ICE's information about the third-party individual is withheld in part under FOIA (b)(7)(E).<br><br>**Reason(s) for Redactions:**  The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  FOIA Exemption (b)(7)(E) exempts from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of this type of information (how much ICE knows about incarcerated inmates) could permit people seeking to interfere with law enforcement investigations and/or operations to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The release of how much ICE may know about a currently incarcerated inmate could reveal techniques and/or procedures for law enforcement investigations or prosecutions or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law.  Disclosure of these techniques and practices in could assist those people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ICE during | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E) |

---

[3] Most of these emails contain an alien's name and/or A-number (which is the equivalent of a Social Security number for a non-citizen) of the individual, which is withheld pursuant to FOIA exemptions (b)(6) and (b)(7)(C).  For the purposes of this *Vaughn* index, this information will be displayed as [Name/A-number] or similar denotation under the sections "Document Title" to protect PII.

| | | enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
|---|---|---|---|
| 1401-1402 | Partial | **Document Title**: Email titled "URGENT OPA – Portland Media on Purported Arrests at Washington County Courthouses"<br><br>**Document Description:** This email is from the ICE Western Regional Communications Director from the Office of Public Affairs ("OPA") to ERO senior leadership in the Seattle Area of Responsibility ("AOR") concerning a media inquiry about claims by the ACLU of Oregon that ERO conducted arrests in Oregon courthouses.<br><br>**Redacted Information:** The summary of the claims and issues, as well as the proposed response from ICE, were withheld pursuant to FOIA exemption (b)(5). ICE employees' PII and the arrested third-party individuals' PII withheld under pursuant to FOIA exemptions (b)(6) and (b)(7)(C).<br><br>**Reason(s) for Redactions:** The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from the Western Regional Communications Director explicitly seeks input from ERO leadership regarding a statement to release to the public about ERO's courthouse arrests made that day. His analysis of the situation and issues to address, as well as the proposed statement, are entirely deliberative and pre-decisional. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. Further, since this document contains proposals for agency action, release of this document may create confusion regarding what positions have actually been adopted by the agency. | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C) |
| 1403 | | **Document Title**: Email titled "[A-number]"<br><br>**Document Description:** This is an email from an ERO Deportation Officer ("DO") to other ERO personnel and their supervisor stating that ERO would effectuate an administrative arrest on an individual when they were released from jail. The document lays out the individual's relevant charges and includes law enforcement sensitive ("LES") statements from the ERO DO about potential issues with the arrest. | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

**Redacted Information:** Two sentences concerning the ERO DO's concerns about the arrest were withheld under FOIA exemptions (b)(5) and (b)(7)(E).

**Reason(s) for Redactions:**

FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct a courthouse arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location. These plans contain a recommendation for agency action based on information known to ERO at the time. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.) Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.

FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take

| | | proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
|---|---|---|---|
| 1507-1509 | Partial | **Document Title**: Email titled "[A-number] Clark County Court arrest 10/10"<br><br>**Document Description:** The original email in this chain is from an ERO Deportation Officer to other ERO personnel and their supervisors about a Field Operations Worksheet ("FOW"[4]) for a courthouse arrest, asking permission from an Assistant Field Office Director[5] to conduct the arrest. The next email from the ICE ERO supervisor contains instructions for carrying out the arrest. The third email contains a new request for permission to conduct two courthouse arrests and stating the rationales for the arrests and the plan for the arrests.<br><br>**Redacted Information:** These emails were partially withheld under FOIA Exemption (b)(7)(E).<br><br>**Reason(s) for Redactions:** The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as where the arrest will take place and what court result would trigger the arrest) that could permit people seeking to violate or circumvent the law to take | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E) |

[4] A FOW lays out all necessary information for a field operation, such as an administrative arrest. The FOW contains the ERO case officer's name; the alien's PII and photograph; the alien's criminal conviction(s); a section outlining the data sources that ERO consulted to get the alien's information; the situation/mission/investigative leads that includes ICE's narrative on the alien; any other team members on the field operation; and the signatures of the approving first-line supervisor and senior supervisory agent approving the operation.

[5] Every ERO field office is led by a single Field Office Director ("FOD"). The FOD is assisted by Deputy Field Office Directors "(DFOD") and Assistant Field Office Directors ("AFOD"). These positions constitute the senior supervisory officers in an ERO field office.

| | | proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
|---|---|---|---|
| 1554 | Partial | **Document Title**: Detainee [Name]<br><br>**Document Description:** This is a report from NORCOR (Northern Oregon Regional Correctional Facility) Corrections, which houses ICE detainees. The report concerns allegations that an inmate was extorting money from other inmates. The report details potential affiliations that inmate may have, as well as the investigation conducted by NORCOR to ensure that this inmate was not engaging in illegal or extortion actions.<br><br>**Redacted Information:** The PII of inmates, third-party individuals, and NORCOR employees, as well as LES information about how NORCOR conducts investigations and how their commissary system works were withheld pursuant to FOIA exemptions (b)(6), (b)(7)(C), and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA exemptions (b)(6) and (b)(7)(C): Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names and contact information of law enforcement ("LE") personnel could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting LE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>Similarly, under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names, biometric information, contact information, immigration history, and/or other identifying information of third-party individuals could reasonably be expected to constitute an unwarranted invasion of these individuals' personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E), (b)(6), (b)(7)(C) |

| | | immigration or citizenship status to the public.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.  Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.  Finally, the third parties identified in the records have not consented to the disclosure of their PII.<br><br>FOIA exemption (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  FOIA Exemption (b)(7)(E) exempts from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of how a corrections facility classifies risk for inmates and conducts internal investigations could permit people seeking to interfere with law enforcement investigations and/or operations to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The release of this internal information could reveal techniques and/or procedures for law enforcement investigations or prosecutions or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law.  The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
|---|---|---|---|
| 1555-1557 | Partial | **Document Title**:  Email titled "Re: FW: HSCEDM-16-F-IG272- NORCOR-REVISED-REQUIREMENTS"<br><br>**Document Description:**  These emails between NORCOR and the ICE Office of Acquisition Management ("OAQ") discuss a change to the rate that NORCOR charges ICE to house their detainees, which is billed at a particular rate per bed, per day ("bed day rate").  ICE is asking for additional requirements for juvenile detention (not detailed in this email), which will affect the bed day rate.<br><br>**Redacted Information:** The bed day rate was withheld pursuant to FOIA Exemption (b)(4).<br><br>**Reason(s) for Redactions:** FOIA Exemption (b)(4) is asserted to withhold the bed day rate charged by NORCOR to house ICE detainees.  The redacted information was provided by ICE by NORCOR in an email as a part of negotiations for a contract under an assurance of privacy. FOIA Exemption 4 protects trade secrets and commercial or financial information obtained from a company that is privileged or confidential.  To qualify as confidential, business information must be both customarily treated as private by its owner and provided to the government under an assurance of privacy.  Release of this information is | Freedom of Information Act 5 U.S.C. § 552 (b)(4) |

| | | | |
|---|---|---|---|
| | | likely to cause harm to the company's competitive position by, inter alia, allowing the company's competitors to identify the company's terms and conditions of its contract with the government. Such information could, in turn, enable competitors to utilize the contractor's bed day rate in the future in underbidding the current contract. | |
| 1558-1574 | Partial | **Document Title**: Email titled "FW: IHSC UCAP NORCOR August 2015"<br><br>**Document Description:** This long series of emails between ERO leadership and the Field Medical Coordinator of the ICE Health Service Corps, Seattle Office, concern an ICE Uniform Corrective Action Plan ("UCAP[6]") for NORCOR based on new health standards. The ICE Health Service Corps provides direct care to approximately 13,500 detainees housed at 21 designated facilities throughout the Nation to include medical, dental and mental health care, and public health services. The emails contain thoughts, opinions, recommendations, and issues identified by ICE personnel regarding the UCAP. The issues being discussed range from dental exam waivers to pregnancy tests.<br><br>**Redacted Information:** These emails were partially withheld under FOIA Exemptions (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br><br>FOIA exemption (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. These emails contain candid conversations about what information needs to be gathered, suggestions for actions, issues with various proposals, existing systems for detainee health care, and what new licenses and training will be needed to implement the changes. These analyses and discussion of issues are entirely deliberative and pre-decisional. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. Further, since this document contains proposals for agency action, release of this | Freedom of Information 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

---

[6] A UCAP helps plan corrective actions for gaps identified during routine review of services rendered, as per the Performance-Based National Detention Standards (PBNDS).

| | | document may create confusion regarding what positions have actually been adopted by the agency regarding ICE's health services for detainees.

FOIA exemption (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  FOIA Exemption (b)(7)(E) exempts from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of this type of information could permit people seeking to interfere with law enforcement investigations and/or operations to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The release of how ICE provides medical services and what can trigger the need for certain services, or how certain conditions trigger special treatment (such as release from custody) could reveal techniques and/or procedures for law enforcement investigations or operations, or disclose guidelines for law enforcement investigations or operations which could reasonably be expected to risk circumvention of the law.  Disclosure of these techniques could assist those people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ICE during enforcement operations, such as claiming to have certain medical conditions to avoid detention.   The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
|---|---|---|---|
| 1723 | Partial | **Document Title**:  Email titled "Arrest of former DACA recipient"

**Document Description:**  This is an email from a DO to ERO senior leadership in the Seattle AOR concerning a potential courthouse arrest of a former  Deferred Action for Childhood Arrivals ("DACA") recipient.  The email details the PII and criminal and immigration history of the subject, and provides rationale for the arrest and arrest location.

**Redacted Information:** The proposal for the arrest was withheld pursuant to FOIA Exemptions (b)(5) and (b)(7)(E).

**Reason(s) for Redactions:**

FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative.  This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct an arrest and (2) why a courthouse arrest may be necessary.   These plans contain a recommendation for agency action, and such pre- | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | | |
|---|---|---|---|
| | | decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)  Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.<br><br>FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States.  Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents.  ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 1736-1740 | Partial | **Document Title**:  Email titled "RE: ICE Arrest of a DACA Recipient in Portland"<br><br>**Document Description:**  These are emails between ERO personnel, ICE Office of the Principal Legal Advisor ("OPLA") attorneys, and the Office of Public Affairs ("OPA") in Seattle regarding the ICE arrest of a DACA recipient.  The emails contain proposed public statements (and proposed edits), the arrested | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| | | individual's PII and criminal and immigration history, and thoughts, opinions, recommendations, and questions from various ICE personnel and attorneys. | |
|---|---|---|---|
| | | **Redacted Information:** These emails were partially withheld pursuant to FOIA Exemption (b)(5). | |
| | | **Reason(s) for Redactions:** The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email contains (1) edits and recommendations on a proposed public statement from ICE, (2) questions from OPA to ERO about the arrest to coordinate responses, and (3) recommendations for agency actions. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.) Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency. | |
| 1743-1746 | Partial | **Document Title:** Email titled "RE: Multnomah County Probation declined to execute federal warrant for 1326 because of 'immigration' charge" | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |
| | | **Document Description:** This is a series of emails between ICE ERO personnel, the U.S. Attorney for the District of Oregon, and an Assistant U.S. Attorney ("AUSA") in the District of Oregon regarding how probation officers would be serving federal warrants after an incident where no guidance was issued. | |
| | | **Redacted Information:** These emails were partially withheld under FOIA Exemption (b)(5). | |
| | | **Reason(s) for Redactions:** The information in this document is properly withheld under FOIA Exemption (b)(5) because it is attorney-client privileged. The attorney-client privilege is applicable to the portions of these records. Communications between Department of Justice attorneys and their clients (ICE ERO officers and AFODs and FODs) were made for the purpose of securing legal advice about how local probation officers would treat federal warrants issued by ICE. Attorney-client communications are | |

| | | |
|---|---|---|
| | | shielded from disclosure in order to encourage a full and frank discussion between the client and his legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel. | |
| 1786-1791 | Partial | **Document Title**: Email titled "DOJ Request for Assistance – 8 U.S.C. § 1373 – SHORT TURNAROUND"<br><br>**Document Description:** This email from the Deputy Assistant Director of ICE ERO Domestic Operations to ERO FODs across the nation concerns an information request from the Department of Justice ("DOJ") regarding 8 U.S.C. § 1373 and grants for 10 specific jurisdictions (which are not redacted). The email lays out DOJ's reasoning behind the request and the draft responses sent by the FODs in response.<br><br>**Redacted Information:** Portions of the emails partially withheld under FOIA Exemption (b)(5).<br><br>**Reason(s) for Redactions:** The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative, as well as attorney-client privileged. This email contains (1) a request from DOJ attorneys to ICE, their client and (2) draft responses from ERO FODs and AFODs. First, such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. Second, the attorney-client privilege is applicable to the portions of these records. Communications between Department of Justice attorneys and their clients (ICE ERO officers and AFODs and FODs) were conducted so that the DOJ could gather information from their client for future activity. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| 1811-1812 | Partial | **Document Title**: Email titled "Recommend dismissal of [A-number] – Motion to suppress pending"<br><br>**Document Description:** This email from a Deputy Chief Counsel ("DCC") of ICE OPLA's Portland sub-office was addressed to the FOD and AFOD in Seattle. The email concerns a legal case that OPLA is recommending the agency dismiss. The write-up from the DCC outlines the facts of the case and procedural history, then offers a long explanation and recommendation for agency action.<br><br>**Redacted Information:** These emails were partially withheld under FOIA Exemption (b)(5).<br><br>**Reason(s) for Redactions:** The information in this document is properly withheld under FOIA Exemption (b)(5) because it is draft, pre-decisional, and deliberative as well as attorney work product and attorney-client privileged.<br><br>First, this document contains pre-decisional and deliberative information. It is a deliberative draft document from an ICE attorney recommending an agency action. FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these documents. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.<br><br>Second, the attorney work product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. Here, this write-up is protected from disclosure because it was prepared by an ICE attorney in anticipation of any such litigation regarding a case. The information withheld was prepared by an agency attorney in contemplation of litigation both in immigration and in federal court.<br><br>Finally, the attorney-client privilege is also applicable to the portions of these records. Communications between ICE attorneys and their clients (ICE agents and officers) were made for the purpose of securing concurrence on a legal recommendation in a case. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| | | | |
|---|---|---|---|
| 1817-1818 | Partial | **Document Title**: Email titled "Request pursuant to USAM 1-4.150"<br><br>**Document Description:** This is an email from a DOJ AUSA from the District of Oregon to the DOJ Office of Professional Responsibility and copying other DOJ attorneys, including the U.S. Attorney. The email was then forwarded to the ERO FOD for Seattle. The email pertains to an allegation of misconduct by a non-DOJ attorney; the allegation is being sent to the DOJ Office of Professional Responsibility for adjudication. The allegation tangentially involves an ICE equity (namely, an allegation that an attorney helping his client evade ICE arrest).<br><br>**Redacted Information:** These emails were partially withheld under FOIA Exemption (b)(5).<br><br>**Reason(s) for Redactions:** The information in this document is properly withheld under FOIA Exemption (b)(5) because it is draft, pre-decisional, and deliberative as well as attorney-client privileged.<br><br>First, this document contains pre-decisional and deliberative information. It is a deliberative document from a DOJ attorney recommending an agency action. FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these documents. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.<br><br>Secondly, the attorney-client privilege is also applicable to the portions of these records. Communications between DOJ attorneys and their clients (ICE FOD and AFOD) were made to inform ICE about a potential issue and provide a legal recommendation. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |
| 1823-1824 | Partial | **Document Title**: Email titled "Operation Near Courthouse"<br><br>**Reason(s) for Redactions: Document Description:** These are three emails between an ICE ERO DO and their AFOD and FOD asking permission to conduct a courthouse arrest. Supervisor permission is required | Freedom of Information Act 5 U.S.C. § |

to conduct a courthouse arrest.  All emails concern the same third-party individual and include their immigration and criminal history.

**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemption (b)(5) and (b)(7)(E).

**Reason(s) for Redactions:**
FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative.  This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct a courthouse arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location.  These plans contain a recommendation for agency action based on information known to ERO at the time.   Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)  Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.

FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States.  Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents.  ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have

| 552 (b)(5), (b)(7)(E) |

| | | | |
|---|---|---|---|
| | | coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 1826 | Partial | **Document Title**: Email titled "Knock and Talks"<br><br>**Document Description:** This five-sentence email from a DO to his supervisors summarizes how many houses ERO approached to knock on the door of a house and speak to its residents. The final statement concerns the DO's opinion and recommendation on the safest ways for DOs to conduct administrative arrests.<br><br>**Redacted Information:** These emails were partially withheld pursuant to FOIA Exemption (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from an ERO officer to his ERO supervisors lays out his opinion and recommendation on the safest way to conduct ERO arrests. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.<br><br>FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because information such as disclosure of the number of houses that ICE approaches on a given administrative arrest would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States; for example, knowing how many houses that ICE approaches in a normal day would allow neighborhoods to potentially map out future ERO operations and either evade | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | |
|---|---|---|
| | | arrests or attack ERO officers. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 1829-1830 | Partial | **Document Title**: Emails titled "Courthouse proximity arrest" and "1:30 Court with Judge Rees"<br><br>**Document Description:** These are three emails between an ICE ERO DO and their AFOD and FOD asking permission to conduct a courthouse arrest. The AFOD's reply email authorizes the arrest with specific instructions to the DO. The DO then emails his team with the plan for arrest.<br><br>**Redacted Information:** These emails were partially withheld pursuant to FOIA Exemption (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct a courthouse arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location. These plans contain a recommendation for agency action based on information known to ERO at the time. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)<br><br>FOIA exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive, as it contains specific arrest plans. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests (which are generally replicated in all arrests) would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
|---|---|---|---|
| 1851-1853 | Partial | **Document Title**: Email titled "DA – [A-number] – [Name]"<br><br>**Document Description:** This is a series of emails between the U.S. Attorney for the District of Oregon, other DOJ attorneys, and the ICE FOD and AFODs. The emails pertain to a legal case of an arrested third-party individual, specifically his custody and/or the potential for an ICE detainer.<br><br>**Redacted Information:** These emails were partially withheld under FOIA Exemption (b)(5).<br><br>**Reason(s) for Redactions:** The information in this document is properly withheld under FOIA Exemption (b)(5) because it is draft, pre-decisional, and deliberative as well as attorney-client privileged.<br><br>First, this document contains pre-decisional and deliberative information. It is a deliberative document from a DOJ attorney recommending an agency action. FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these documents. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.<br><br>Secondly, the attorney-client privilege is also applicable to the portions of these records. Communications between DOJ attorneys and their clients (ICE FOD and AFODs) were made to inform ICE about a potential issue and provide a legal recommendation. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| | | | |
|---|---|---|---|
| | | informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel. | |
| 1861-1863, 18301-18302, 21818-21819, 23682-23683 | Partial | **Document Title**: Email titled "Guidance Update: Enforcement Actions at or Near Courthouses" | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

**Document Title**: Email titled "Guidance Update: Enforcement Actions at or Near Courthouses"

**Document Description:** This email is from the AFOD to the Criminal Alien Program ("CAP") team that reiterates the ICE policies on courthouse arrests and gives specifics instructions and guidance for future courthouse arrests.

**Redacted Information:** These emails were partially withheld pursuant to FOIA Exemption (b)(5) and (b)(7)(E).

**Reason(s) for Redactions:**
FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from an ERO AFOD to his ERO employees' supervisors gives specific recommendations for agency action, namely for how to conduct future ICE arrests in a courthouse. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.

FOIA exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in

| | | these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
|---|---|---|---|
| 1896-1898 | Partial | **Document Title**: Email titled "IFI Request A#[A-number]"<br><br>**Document Description:** This is an email from a DO to the FOD requesting an Important Federal Interest ("IFI") designation for a case. The two sections redacted concern the DO's opinion for why the case should receive the IFI designation, and the AFOD's response and request for further action.<br><br>**Redacted Information:** These emails were partially withheld pursuant to FOIA Exemption (b)(5).<br><br>**Reason(s) for Redactions:** The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email between an ERO FOD and a DO that (1) expresses a recommendation for agency action and (2) gives specific instructions for next steps from a supervisor to their subordinate. These plans contain a recommendation by a subordinate to his superior regarding agency action. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |
| 1907-1910 | Partial | **Document Title**: Email titled " Multnomah County Court Arrest"<br><br>**Document Description:** These are emails between a DO and their SDDO asking permission to conduct multiple courthouse arrests. In each case, the SDDO requests further information to justify the arrest and/or gives specific instructions for conducting the arrest.<br><br>**Redacted Information:** These emails were partially withheld pursuant to FOIA Exemption (b)(5) and (b)(7)(E). | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E |

**Reason(s) for Redactions:**

FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct a courthouse arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location. These plans contain a recommendation for agency action based on information known to ERO at the time. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)

FOIA exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.

| | | | | |
|---|---|---|---|---|
| 1927-1932 | Partial | **Document Title**: Email chain with titles "Lane County Arrest Report – [Name].pdf" and "Priority Question"<br><br>**Document Description:** These are emails between an OPLA Assistant Chief Counsel ("ACC") and a DO where the DO is asking the ACC for legal guidance and determinations on a case. The DO then sends the conversation to the SDDO to secure a IFI designation on the case.<br><br>**Redacted Information:** These emails were partially withheld pursuant to FOIA Exemption (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(5): The information in this document is properly withheld under FOIA Exemption (b)(5) because it is draft, pre-decisional, and deliberative as well as attorney-client privileged.<br><br>First, this document contains pre-decisional and deliberative information. It is a deliberative document from an ICE ACC attorney recommending an agency action. FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these documents. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.<br><br>Secondly, the attorney-client privilege is also applicable to the portions of these records. Communications between OPLA attorneys and their client (an ICE DO) were necessary for ERO to obtain legal guidance from their attorneys. The response emails state OPLA's opinions and guidance to ERO, and states that more information will come as OPLA develops more guidance for the field. This information is direct advice to the client and does not contain any information about ICE's position in the legal case or its agency policy. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his or her legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel.<br><br>FOIA exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | | |
|---|---|---|---|
| | | information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of exactly what constitutes an IFI and how that factors into what actions ICE would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States.  The information redacted in these sections is limited to specific information (such as what constitutes an IFI and how that changes ICE's treatment of the case) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 1958-1959, 10588-10589 | Partial | **Document Title**:  Email titled "RE: ACLU video of courthouse approach"<br><br>**Document Description:**  This is an email between the ERO FOD in Seattle and other ERO personnel discussing an encounter between ERO and the ACLU.  The FOD is instructing her managers on what reporting she expects from ERO officers involved, what should be included in the reports, and when they are due.<br><br>**Redacted Information:** These emails were partially withheld pursuant to FOIA Exemption (b)(5).<br><br>**Reason(s) for Redactions:** The information in this document is properly withheld under FOIA Exemption (b)(5) because it is pre-decisional and deliberative.  The document is a deliberative email from a FOD to her ERO managers instructing them to perform certain reporting activities in response to a public incident being covered by news media, which the agency will evaluate to both determine appropriate personnel actions and the agency's next steps.  FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these documents.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| | | | |
|---|---|---|---|
| 2060-2063 | Partial | **Document Title**:  Email titled "RE: Immigration and Customs Enforcement in Clackamas County (Information Gathering)"<br><br>**Document Description:**  This is an email from an OPLA DCC to a member of Clackamas County (title unknown) and ERO FOD/AFODs.   The email answered a series of questions posted by the county to ERO leaders that clarify where ICE gathers information, the criteria for certain actions (warrants, arrests, etc.), and other information.<br><br>**Redacted Information:** These emails were partially withheld pursuant to FOIA Exemption (b)(5).<br><br>**Reason(s) for Redactions:**   The information in this document is properly withheld under FOIA Exemption (b)(5) because it is attorney-client privileged.<br><br>First, this document contains pre-decisional and deliberative information.  It is a deliberative document from a OPLA attorney recommending an agency action., and discussing questions that has been posed by ICE and local LE.  FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these documents.  This is an ongoing conversation about how to handle certain ICE issues.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.<br><br>Secondly, the attorney-client privilege is also applicable to the portions of these records. Communications between OPLA attorneys and their client (an ICE DO) were necessary for ERO to obtain legal guidance from their attorneys.  The response emails state OPLA's opinions and guidance to ERO, and states that more information will come as OPLA develops more guidance for the field.  This information is direct advice to the client and does not contain any information about ICE's position in the legal case or its agency policy.  Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his or her legal advisor.  The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| | | |
|---|---|---|
| 2064-2067 | Partial | **Document Title**: Email titled "FW: Arrest of DACA recipient"<br><br>**Reason(s) for Redactions: Document Description:** These are three emails between an ICE ERO DO and their AFOD/FOD asking permission to conduct a courthouse arrest. Supervisor permission is required to conduct a courthouse arrest. All emails concern the same third-party individual and include their immigration and criminal history. The FOD and AFOD requested more information on the arrest before giving a response in these exchanges.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemption (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct a courthouse arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location. These plans contain a recommendation for agency action from a subordinate to a superior. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.) Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.<br><br>FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
|---|---|---|---|
| 2072-2073 | Partial | **Document Title**: Email titled "RE: Multnomah County concern and complaints"<br><br>**Document Description:** This email is from the FOD to their AFODs about local Oregon judges inquiring into ICE courthouse arrests. The FOD summarizes the information and conversations that have taken place to give the AFODs background, then issues direct instructions to the AFODs for current agency actions while further policies are developed.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemption (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br><br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from an ERO FOD to their managers laying out background information on an emerging problem and issuing direct orders on how to act while more information is gathered and policies are developed. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.) Further, since this document contains proposals for interim agency action, which may not have been ultimately | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.

FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests, and what new parameters may be placed in the future on courthouse arrests, would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 2077-2081 | Partial | **Document Title**: Email titled "RE: NORCOR hunger strike question"

**Document Description:** A news station reached out to ICE OPA regarding an ACLU public statement about a hunger strike at NORCOR, and asked ICE to verify its accuracy. In a responding email, the FOD evaluated various sentences from the ACLU statement, providing clarifying information or requesting more information.

**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemption (b)(5).

**Reason(s) for Redactions:** The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from an ERO FOD to OPA lays out various information, history, and opinions about ICE ERO activities and authorities. The information is being provided to OPA so that OPA can make a public statement containing that information. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| | | | |
|---|---|---|---|
| | | to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the situation and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)  Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency. | |
| 2082-2085 | Partial | **Document Title**:  Email titled "RE: NORCOR List of Issues"<br><br>**Document Description:**  This is an email from an AFOD to the FOD summarizing a visit with detainees at NORCOR, their complaints about their situation, how ERO and NORCOR have begun to address the issues, and the AFOD's opinions on the spirit of the meeting.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemption (b)(5).<br><br>**Reason(s) for Redactions:**  The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative.  This email from an ERO AFOD to  his supervisor, the FOD, that relates to ICE detention activities and actions.  The information is being provided to the FOD so that the FOD can make future decisions.  Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.  Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |
| 2099-2100 | Partial | **Document Title**:  Issue Paper - NPR on Courthouse Arrests.docx<br><br>**Document Description:**   This document was an attachment to the previous email between the Seattle FOD and Seattle OPA; Seattle OPA is attempting to facilitate an interview with NPR about courthouse | Freedom of Information Act 5 |

| | | arrests.  This document is an issue paper written as "an initial prep package" per OPA and is meant to be further refined, as stated in the email.  The issue paper contains background and talking points for the interview on ICE administrative arrests, including those in courthouses.  The document contains numerous highlighted fields with placeholders ("XXX"), indicating that further information and statistics needed to be inserted.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemption (b)(5).<br><br>**Reason(s) for Redactions:**  The information in these pages was properly withheld under FOIA exemption (b)(5) because it is draft, pre-decisional, and deliberative.  This issue paper was from OPA to the FOD and was meant to be further edited before becoming final, as stated in the email between OPA and the FOD.   It contained placeholder fields for further insertion of text, further showcasing its draft format, and contains recommendations for agency statements to the public.   Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. Further, since this document contains proposals for agency statements, which may not have been released. Release of this document may create confusion regarding what positions have actually been adopted by the agency. | U.S.C. § 552 (b)(5) |
| 2147-2151 | Partial | **Document Title**:  Email titled "RE: URGENT PRIVACY REQUEST: Portland Media Alleging Arrest at Sensitive Location (Hospital)"<br><br>**Document Description:**  This email originated with OPA, who sent an issue outline to other OPA personnel about an allegation from a news media source that ICE conducted an administrative arrest on hospital grounds.  The email contains a summary of the issue, a proposed ICE statement, and internal-use-only background on the third-party in question, including their immigration and criminal history.  The remaining conversations between OPA and/or the Seattle FOD discuss various ICE policies, clarify and correct portions of the background information, and provide edits for the proposed public statement.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemption (b)(5) and (b)(7)(E). | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

**Reason(s) for Redactions:**

FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from OPA to other OPA personnel and the FOD lays out (1) proposed ICE statements for public release, (2) background information for internal use only, and (3) opinions, narratives, and recommendations for agency action. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.) Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.

FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts arrests at sensitive locations would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. These arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.

| | | | |
|---|---|---|---|
| 2186-2187 | Partial | **Document Title**: Email titled "RE: Press release from Susan [sic] Bonamici"<br><br>**Document Description:** These emails between the FOD and the DFOD concern a summary of recent ICE outreach attempts in light of a press release from U.S. Representative Suzanne Bonamici.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemption (b)(5).<br><br>**Reason(s) for Redactions:** The information in this document is properly withheld under FOIA Exemption (b)(5) because it is pre-decisional and deliberative. The document is a deliberative email from a FOD to a DFOD about communications and outreach efforts about ICE ERO activities. FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these documents. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |
| 2203-2214 | Partial | **Document Title**: Email titled "Cornelius Police Department - Third Party Release"<br><br>**Document Description:** This is a police report from Gresham Police Department about an individual incident; it includes a third party's PII, several narratives about a DUI, Implied Consent Combined Report, an Intoxilyzer 80000 Operator's Checklist from the Oregon State Police Forensic Services Division, a Breathe Test Report, and a DUII Supplemental.<br><br>**Redacted Information:** The PII of law enforcement ("LE") employees and third-party individuals were withheld pursuant to FOIA exemptions (b)(6) and (b)(7)(C). Law enforcement sensitive codes (such as a breathalyzer serial number and the officers internal numeric code) and the matrices for conduct field sobriety tests were withheld pursuant to FOIA Exemption (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(6) and (b)(7)(C): Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names and contact information of local LE personnel could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting local LE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C), (b)(7)(E) |

The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.

Similarly, under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of PII of third-party individuals could reasonably be expected to constitute an unwarranted invasion of these individuals' personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII.

FOIA exemptions (b)(7)(E): The codes and LE guides for field sobriety tests contained in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. FOIA Exemption (b)(7)(E) exempts from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of this type of information could permit people seeking to interfere with law enforcement investigations and/or operations to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The release of internal codes and LE testing matrices could reveal techniques and/or procedures for law enforcement investigations or prosecutions or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law. Disclosure of this information could assist third parties in deciphering the meanings of the codes and/or could enable an individual to navigate, alter, and/or manipulate law enforcement databases (where the codes are used), were they to gain access to the system. Disclosure of these techniques and practices in navigating the databases could assist those people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.

| | | | |
|---|---|---|---|
| 2594-2629 | | **Document Title**:  Untitled<br><br>**Document Description:**  These are unreadable printouts of an Excel spreadsheet regarding declined detainers.  The information was withheld in full as the sheets could not accurately be read.  The spreadsheet was produced in full as a readable Excel format to Plaintiff in September 2019. | |
| 2731-2737 | Full | **Document Title**:  Draft documents for United States District Court of Oregon<br><br>**Document Description:**  These are draft filing documents sent by an OPLA ACC to ERO and the United States Attorney's Office for the District of Oregon (note: the parties on the email are apparent from the previous email chain, located on Bates stamped pages 2725-2730, that contained these documents as attachments).  They are: an unsigned draft Stipulated Judicial Order of Removal; a draft Application and Allegations in Support of Judicial Order of Removal; and a draft Notice of Intent to Request Stipulated Judicial Order of Removal. The previous email chain contains the title of all of these attachments, unredacted, in the "Attachments" line of the first email (Bates stamp 2725).<br><br>**Redacted Information:** The pages are withheld in full pursuant to FOIA Exemption (b)(5).<br><br>**Reason(s) for Redactions:**  These pages were properly withheld under FOIA exemption (b)(5) because they are draft documents and attorney work product.<br><br>First, these are draft documents being sent up for concurrence from ERO and the USAO, thus making them pre-decisional and deliberative.  FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these documents.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.<br><br>Second, the attorney work product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation.   Here, these documents are protected from disclosure because they was clearly prepared by an ICE attorney for a pending case where a plea agreement was being lodged.  The information withheld was prepared by an agency attorney in contemplation of litigation in federal court. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| | | | |
|---|---|---|---|
| 2771-2772 | Partial | **Document Title**:  Email titled "ICE Statement in response to media coverage of Washington County situation on Monday, 9-18-2017"<br><br>**Document Description:**  This is an email from the Seattle FOD to the U.S. Attorney and another USAO employee regarding ICE's adherence to local policies about communications with local law enforcement.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemption (b)(5).<br><br>**Reason(s) for Redactions:**   The information in this document is properly withheld under FOIA Exemption (b)(5) because it is attorney-client privileged.  Communications between DOJ attorneys and their client (ICE ERO) were necessary for ERO to update the local USAO about ICE's adherence to local LE policies, which may or may not affect decisions made by DOJ about how to move forward with certain matters regarding their client.  Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his or her legal advisor.  The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client.  If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |
| 2813-2817 | Partial | **Document Title**:  Email titled "RE: Courthouse Incident"<br><br>**Document Description:**  These are emails between the U.S. Attorney and the ERO-Seattle FOD and AFOD regarding an ERO arrest operation that took place between February and March of 2017.  It includes a detailed narrative from ERO Seattle about a courthouse arrest, including the planning, execution, and protesters that they encountered during the attempted arrest.<br><br>**Reason(s) for Redactions:**   **Redacted Information:** The pages are withheld in part pursuant to FOIA Exemption (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br><br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative.  This email from an ERO AFOD to the U..S Attorney lays out (1) the reasons underlying the decision to conduct a courthouse arrest, (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location, and (3) what happened during | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

the arrest. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.) Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.

FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.

| | | | |
|---|---|---|---|
| 2843-2856 | Partial | **Document Title**: Email titled "RE: DDOR 4 - FOD Validation and LEA Engagement"<br><br>**Document Description:** These emails between ERO personnel discuss an initial tasking from the ERO Executive Associate Director ("EAD"), which is the most senior leader in ERO. The ERO EAD has requested any necessary edits from all AORs to a DDOR ("Declined Detainer Outcome Report").[7] The remainder of the emails are between various ERO personnel and the Seattle FOD as they edit draft versions of an informational table that is responsive to the tasking and would change the DDOR. The various emails contains edits and changes to the table, both from the FOD and from her AFODs and SDDOs, and the FOD requests various additional information for insertion into the table. Th table has highlighted boxes and empty boxes, showcasing its draft format.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemption (b)(5).<br><br>**Reason(s) for Redactions:** The information in this document is properly withheld under FOIA Exemption (b)(5) because it is draft, pre-decisional, and deliberative. This email contains draft versions of an informational table requested by the highest-ranking leader in ERO, who dictated that the information required FOD approval before submission. These emails are back-and-forth conversations about proposed edits, with the FOD offering direction and asking for additional information from her ERO managers. FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these documents. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |
| 2912-2913 | Partial | **Document Title**: Email titled "RE: [Name] [Local LE ID number]"<br><br>**Document Description:** These are emails between a local AUSA, OPLA ACCs, and a Deputy District Attorney from the Yamhill County District Attorney's Office (note: all parties are identifiable by unredacted signature blocks in the emails) regarding whether the local USAO will take a case for federal | Freedom of Information Act 5 |

---

[7] When state and local LE began to decline ICE immigration detainers, Congress ordered that "the Department shall update the Committees not later than 60 days after the date of enactment of this Act on the number of jurisdictions failing to honor ICE detainers, the number of individuals released as a result, delineated by ICE priority category, and the number of such individuals remaining at large." An example of a Declined Detainer Outcome Report can be found at https://www.ice.gov/doclib/ddor/ddor2017_01-28to02-03.pdf

| | | prosecution. The emails contain attorneys' candid opinions and recommendations about the case, direct questions from both sides about evidence and case details (i.e., photos and videos exist of evidence, how do we obtain other evidence, etc.). | U.S.C. § 552 (b)(5) |
|---|---|---|---|
| | | **Redacted Information:** The pages are withheld in part pursuant to FOIA Exemption (b)(5). | |
| | | **Reason(s) for Redactions:** The information in this document is properly withheld under FOIA Exemption (b)(5) because it is pre-decisional and deliberative as well as attorney-client privileged. | |
| | | First, this document contains pre-decisional and deliberative information. It is a deliberative email from a DOJ attorney suggesting federal action and requesting further information from another federal agency and a local agency. FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these documents. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency. | |
| | | Secondly, the attorney-client privilege is also applicable to the portions of these records. Communications between DOJ attorneys and their clients (ICE and local DA's office) were necessary for ERO to obtain legal guidance from their attorney. The response emails state OPLA's opinions and guidance, as well as DOJ's opinions and recommendations. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his or her legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel. | |

| 2928-2929 | Partial | **Document Title**:  Email titled "RE: Beaverton Municipal Court Arrest"<br><br>**Document Description:** These are four emails between an ICE ERO DO and their supervisor asking permission to conduct a courthouse arrest.  Supervisor permission is required to conduct a courthouse arrest.  All emails concern the same third-party individual and include their immigration and criminal history, and the supervisor's response.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemption (b)(5) and (b)(7)(E).<br><br>**Reasons) for Redactions:**<br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative.  This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct a courthouse arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location.  These plans contain a recommendation for agency action based on information known to ERO at the time.   Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.  Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.<br><br>FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States.  Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents.  ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | |
|---|---|---|
| | | these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 2931-2932 | Partial | **Document Title**:  Email titled "Requests from state and local jurisdictions to transfer custody of ICE detainee for unresolved criminal charges"<br><br>**Document Description:**  This is an email from the FOD to all ERO employees in Oregon regarding requests from state and local jurisdictions to transfer custody of ICE detainee for unresolved criminal charges.  The redacted information includes a paragraph of legal advice from an OPLA DCC to all ERO personnel and the FOD's explicit instructions on what protocol must be followed if a county jurisdiction refuses to comply with a state court's transportation order.<br><br>**Redacted Information:** These emails were partially withheld pursuant to FOIA Exemption (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(5): The information in this document is properly withheld under FOIA Exemption (b)(5) because it is attorney-client privileged.  Communications between OPLA attorneys and their client (ICE ERO) were necessary for ERO to obtain legal guidance from their attorneys.  The email from the FOD states OPLA's opinions and guidance to ERO.  This information is direct advice to the client and does not contain any information about ICE's position in the legal case.  Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his or her legal advisor.  The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client.  If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel.<br><br>FOIA exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of what information is sent by a FOD in a particular situation and how it is tracked would | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | |
|---|---|---|
| | | disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 3372-3373, 9109-9110 | Partial | **Document Title**: Incident at Washington County Courthouse (dated September 20, 2017)

**Document Description:** This is a narrative from an ERO DO regarding an administrative arrest at or near the Washington County Courthouse on September 18, 2017, told in their own words based on their own experience. While conducting the arrest, legal observers from Plaintiff's organization were encountered by ERO personnel.

**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemption (b)(5) and (b)(7)(E).

**Reason(s) for Redactions:**
FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. The FOD of ERO-Seattle requested that any ERO officer present for the administrative arrest on September 18, 2017 should write a personal narrative about the incident and submit the narrative for personnel record reasons. The ERO officers then wrote short narratives containing their recollections and opinions about what occurred. FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)

FOIA exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
|---|---|---|---|
| 3374-3375 | Partial | **Document Title**: Incident at Washington County Courthouse (dated October 17, 2017)<br><br>**Document Description:** This is a narrative from an ERO DO regarding an administrative arrest at or near the Washington County Courthouse on September 18, 2017, told in their own words based on their own experience. While conducting the arrest, legal observers from Plaintiff's organization were encountered by ERO personnel.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemption (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. The FOD of ERO-Seattle requested that any ERO officer present for the administrative arrest on September 18, 2017 should write a personal narrative about the incident and submit the narrative for personnel record reasons. The ERO officers then wrote short narratives containing their recollections and opinions about what occurred. FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.) | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | FOIA exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
|---|---|---|---|
| 3376-3377 | Partial | **Document Title**: Events of September 18, 2017 (dated September 18, 2017)<br><br>**Document Description:** This is a narrative from an ERO DO regarding an administrative arrest at or near the Washington County Courthouse on September 18, 2017, told in their own words based on their own experience. While conducting the arrest, legal observers from Plaintiff's organization were encountered by ERO personnel.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemption (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. The FOD of ERO-Seattle requested that any ERO officer present for the administrative arrest on September 18, 2017 should write a personal narrative about the incident and submit the narrative for personnel record reasons. The ERO officers then wrote short narratives containing their recollections and opinions about what occurred. FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)

FOIA exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.

| 3378 | Partial | **Document Title**: ACLU video of Courthouse Encounter (dated September 21, 2017)<br><br>**Document Description:** This is a narrative from an ERO DO regarding an administrative arrest at or near the Washington County Courthouse on September 18, 2017, told in their own words based on their own experience. While conducting the arrest, legal observers from Plaintiff's organization were encountered and filmed this DO.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemption (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. The FOD of ERO-Seattle requested that any ERO | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

officer present for the administrative arrest on September 18, 2017 should write a personal narrative about the incident and submit the narrative for personnel record reasons. The ERO officers then wrote short narratives containing their recollections and opinions about what occurred. FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)

FOIA exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.

| 3379-3380 | Partial | **Document Title**: Events of September 18, 2017 (dated September 21, 2017)<br><br>**Document Description:** This is a narrative from an ERO DO regarding an administrative arrest at or near the Washington County Courthouse on September 18, 2017, told in their own words based on their own experience. While conducting the arrest, legal observers from Plaintiff's organization were encountered by ERO personnel. | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemption (b)(5) and (b)(7)(E).

**Reason(s) for Redactions:**

FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. The FOD of ERO-Seattle requested that any ERO officer present for the administrative arrest on September 18, 2017 should write a personal narrative about the incident and submit the narrative for personnel record reasons. The ERO officers then wrote short narratives containing their recollections and opinions about what occurred. FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)

FOIA exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.

| | | | |
|---|---|---|---|
| 3381-3382 | Partial | **Document Title**:  09-18-2017 - ACLU video/Courthouse approach (dated September 21, 2017)<br><br>**Document Description:**  This is a narrative from an ERO DO regarding an administrative arrest at or near the  Washington County Courthouse on September 18, 2017, told in their own words based on their own experience.  While conducting the arrest, legal observers from Plaintiff's organization were encountered by ERO personnel.<br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemption (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative.  The FOD of ERO-Seattle requested that any ERO officer present for the administrative arrest on September 18, 2017 should write a personal narrative about the incident and submit the narrative for personnel record reasons.  The ERO officers then wrote short narratives containing their recollections and opinions about what occurred.  FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)<br><br>FOIA exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States.  Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents.  ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | |
|---|---|---|
| | | that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 3388-3389, 11259-11260 | Partial | **Document Title**: ERO Seattle - Elected Officials' Interest in Recent Encounter Between ERO Officers and a United States Citizen (dated September 21, 2017)<br><br>**Document Description:** This is an issue paper from ERO Seattle concerning elected officials' interest about the administrative arrest at or near the Washington County Courthouse on September 18, 2017. The paper begins with a section titled "Issue", which lays out local media stories on a letter from local elected officials, and then is followed by a section titled "Background," which contained case background, the plan for the arrest, and ERO personnel's recollections, opinions, and assumptions about what happened during the course of their enforcement activities.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemption (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. The FOD of ERO-Seattle requested that any ERO officer present for the administrative arrest on September 18, 2017 should write a personal narrative about the incident and submit the narrative for personnel record reasons. The ERO officers then wrote short narratives containing their recollections and opinions about what occurred. This issue paper contains those opinions and recollections, and is being submitted to ERO leadership for review. FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)<br><br>FOIA exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | | |
|---|---|---|---|
| | | information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States.  Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents.  ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 3413-3414 | Partial | **Document Title**: Email titled "RE: Thank you and the article on OregonLive"

**Document Description:**  This is an email between the U.S. Attorney for the District of Oregon and the FOD of ERO-Seattle where the FOD gives her initial understanding of what occurred during  the administrative arrest near the  Washington County Courthouse on September 18, 2017, and what follow-up actions she is taking to further understand the events.

**Redacted Information:** These emails were partially withheld pursuant to FOIA Exemption (b)(5) and (b)(7)(E).

**Reason(s) for Redactions:**
FOIA Exemptions (b)(5): The information in this document is properly withheld under FOIA Exemption (b)(5) because it is draft, pre-decisional, and deliberative as well as attorney-client privileged.

First, this email contains the opinions and conclusions of the FOD, who is conversing informally with the local U.S. Attorney.  FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these documents.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. | |
|---|---|---|---|
| | | Secondly, the attorney-client privilege is also applicable to the portions of these records. Communications between DOJ attorneys and their client (ICE) occurred because the DOJ needed more information about recent client activities in order to better advise them. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his or her legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel. | |
| | | FOIA exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 3415-3416 | Partial | **Document Title**: Events of September 18, 2017 (dated September 21, 2017)<br><br>**Document Description:** This is a narrative from an ERO DO regarding an administrative arrest at or near the Washington County Courthouse on September 18, 2017, told in their own words based on their own experience. While conducting the arrest, legal observers from Plaintiff's organization were encountered by ERO personnel. | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemption (b)(5) and (b)(7)(E).

**Reason(s) for Redactions:**
FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. The FOD of ERO-Seattle requested that any ERO officer present for the administrative arrest on September 18, 2017 should write a personal narrative about the incident and submit the narrative for personnel record reasons. The ERO officers then wrote short narratives containing their recollections and opinions about what occurred. FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)

FOIA exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.

| | | |
|---|---|---|
| 3417-3418 | Partial | **Document Title**: ACLU Involvement 9/11/2017 (dated September 11, 2017)<br><br>**Document Description:** This is a narrative from an ERO DO regarding an administrative arrest at or near the Washington County Courthouse on September 18, 2017, told in their own words based on their own experience. While conducting the arrest, legal observers from Plaintiff's organization were encountered by ERO personnel.<br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemption (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. The FOD of ERO-Seattle requested that any ERO officer present for the administrative arrest on September 18, 2017 should write a personal narrative about the incident and submit the narrative for personnel record reasons. The ERO officers then wrote short narratives containing their recollections and opinions about what occurred. FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)<br><br>FOIA Exemption (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
|---|---|---|---|
| 3563 | Full | **Document Title**: Untitled<br><br>**Document Description:** This is a mugshot, which was sent as an attachment to the email found on the page Bates stamped 3562.<br><br>**Redacted Information:** This mugshot was withheld in part pursuant to FOIA Exemptions (b)(6) and (b)(7)(C).<br><br>**Reason(s) for Redactions:** Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names, PII, biometric information, contact information, immigration history, and/or other identifying information of third-party individuals could reasonably be expected to constitute an unwarranted invasion of these individuals' personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third party identified in the record has not consented to the disclosure of their PII. | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |
| 3564 | Partial | **Document Title**: Email titled "[Name]"<br><br>**Document Description:** This email from a Record Specialist at the Washington County Sheriff's Office to ICE contains a mugshot of a third-party individual and a single URL link to what appears to be the local LE agency's website/database where the mugshot is stored.<br><br>**Redacted Information:** The URL was withheld in part pursuant to FOIA Exemption (b)(7)(E). The photo was withheld pursuant to FOIA Exemptions (b)(6) and (b)(7)(C). | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E), (b)(6), (b)(7)(C) |

| | | | |
|---|---|---|---|
| | | **Reason(s) for Redactions:**  The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  FOIA Exemption (b)(7)(E) exempts from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of this URL could permit people seeking to interfere with law enforcement investigations and/or operations to take proactive steps to counter operational and investigative actions taken by ICE and/or local LE. The release of internal URLs could reveal techniques and/or procedures for law enforcement investigations or prosecutions or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law.  Disclosure of this information could assist third parties in attempts to navigate, alter, and/or manipulate law enforcement databases, were they to gain access to the system.  Disclosure of these techniques and practices in navigating the databases could assist those people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by local LE.  The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 4455 | Partial | **Document Title**:  Umatilla & Morrow Counties State Courts

**Document Description:** This document was attached to an email found on pages Bates stamped 4451-4452, which was sent by the Umatilla and Morrow Counties State Courts in response to an ERO request for conviction documents on a third-party individual.  The document in question appears to be a quarter-sheet page that is likely a cover label for case documents, based on the fields.  It has the following typewritten fields:  Case Number; Judge; State vs. _____ ; Pre-trial Date; Trial Date; and Other.  The bottom reads "COPIES: White - Court   Canary – Defendant  Pink – District Attorney   Gold- Defense Attorney."   In the upper right corner, "* Needs Spanish Interp" is handwritten.

**Redacted Information:**  The case number, name of the defendant, and any other names written on the forms were withheld pursuant to  FOIA Exemptions (b)(6) and (b)(7)(C).  (Please note that the case number field was erroneously withheld under (b)(7)(E) – it should have been withheld under (b)(6) and (b)(7)(C).)

**Reason(s) for Redactions:**   Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names and other identifying information (in this case, the case number that is associated with their name) of third-party individuals could reasonably be expected to constitute an unwarranted invasion of these individuals' personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |

| | | |
|---|---|---|
| | | being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII. | |
| 4483 | Partial | **Document Title**: Umatilla & Morrow Counties State Courts

**Document Description:** This document was attached to an email found on pages Bates stamped 4451-4452, which was sent by the Umatilla and Morrow Counties State Courts in response to an ERO request for conviction documents on a third-party individual. The document in question appears to be a quarter-sheet page that is likely a cover label for case documents, based on the fields. It has the following typewritten fields: Case Number; Judge; State vs. _____ ; Pre-trial Date; Trial Date; and Other. The bottom reads "COPIES: White - Court   Canary – Defendant  Pink – District Attorney   Gold- Defense Attorney."

**Redacted Information:**  The case number, name of the defendant, and any other names written on the forms were withheld pursuant to  FOIA Exemptions (b)(6) and (b)(7)(C).  (Please note that the case number field was erroneously withheld under (b)(7)(E) – it should have been withheld under (b)(6) and (b)(7)(C).)

**Reason(s) for Redactions:**   Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names and other identifying information (in this case, the case number that is associated with their name) of third-party individuals could reasonably be expected to constitute an unwarranted invasion of these individuals' personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |

| | | | |
|---|---|---|---|
| | | disclosure of this information.  Finally, the third parties identified in the records have not consented to the disclosure of their PII. | |
| 4490 | Partial | **Document Title**:  Umatilla & Morrow Counties State Courts<br><br>**Document Description:** This document was attached to an email found on pages Bates stamped 4451-4452, which was sent by the Umatilla and Morrow Counties State Courts in response to an ERO request for conviction documents on a third-party individual.  The document in question appears to be a quarter-sheet page that is likely a cover label for case documents, based on the fields.  It has the following typewritten fields:  Case Number; Judge; State vs. _____ ; Pre-trial Date; Trial Date; and Other.  The bottom reads "COPIES: White - Court   Canary – Defendant   Pink – District Attorney   Gold- Defense Attorney."   In the upper right corner, "* Needs Spanish Interp" is handwritten.<br><br>**Redacted Information:**  The case number, name of the defendant, and any other names written on the forms were withheld pursuant to  FOIA Exemptions (b)(6) and (b)(7)(C).  (Please note that the case number field was erroneously withheld under (b)(7)(E) – it should have been withheld under (b)(6) and (b)(7)(C).)<br><br>**Reason(s) for Redactions:**   Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names and other identifying information (in this case, the case number that is associated with their name) of third-party individuals could reasonably be expected to constitute an unwarranted invasion of these individuals' personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.  Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.  Finally, the third parties identified in the records have not consented to the disclosure of their PII. | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |

| | | | |
|---|---|---|---|
| 4957 | Partial | **Document Title**:   Email titled "Persons of Interest"<br><br>**Document Description:**  This email is from a Deputy District Attorney in the Umatilla County District Attorney's Office to ICE about persons of interest.  Only names and identifiers were withheld; the text of the email is fully unredacted.<br><br>**Redacted Information:** The names of the third-party persons of interest are withheld in part pursuant to FOIA  Exemptions (b)(6) and (b)(7)(C).  Any law enforcement sensitive ("LES") identifiers were withheld under FOIA Exemption (b)(7)(E).<br><br>**Reason(s) for Redactions:**   The LES identifiers on this page were properly withheld under FOIA exemption (b)(7)(E) because it is law enforcement sensitive.  FOIA Exemption (b)(7)(E) exempts from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of this type of information could permit people seeking to interfere with law enforcement investigations and/or operations to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The release of such LES identifiers could reveal techniques and/or procedures for law enforcement investigations or prosecutions; disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law; or reveal the existence of investigations or files on a third-party individual.  The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C), (b)(7)(E) |
| 4998-5001 | Partial | **Document Title**:  Email titled "Re: [Identifier] [Name]"<br><br>**Document Description:**  This email is from a Deputy District Attorney in the Umatilla County District Attorney's Office to ICE about a third-party individual.<br><br>**Redacted Information: I**nformation in this document is withheld in part pursuant to FOIA Exemption (b)(5).<br><br>**Reason(s) for Redactions:**   The information in these pages was properly withheld under FOIA exemption (b)(5) because it is attorney-client privileged.  The Deputy District Attorney is offering up information and an opinion to ERO about a potential immigration enforcement action.  Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his or her | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| | | | |
|---|---|---|---|
| | | legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel. | |
| 5046-5050 | Partial | **Document Title**: Untitled<br><br>**Document Description:** This is a spreadsheet that contains the entire inventory of possible internal codes for an unspecified database. The headers (nationality; sex; DCOs; status; criminal history; class level; gang membership) were all released; only the codes themselves were withheld.<br><br>**Redacted Information:** The information in this document are withheld in part pursuant to FOIA Exemption (7)(E).<br><br>**Reason(s) for Redactions:** The codes contained in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. FOIA Exemption (b)(7)(E) exempts from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of this type of information could permit people seeking to interfere with law enforcement investigations and/or operations to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The release of internal codes could reveal techniques and/or procedures for law enforcement investigations or prosecutions or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law. Disclosure of this information could assist third parties in deciphering the meanings of the codes and/or could enable an individual to navigate, alter, and/or manipulate law enforcement databases, were they to gain access to the system. Disclosure of these techniques and practices in navigating the databases could assist those people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E) |
| 5063-5066 | Full | **Document Title**: Untitled<br><br>**Document Description:** These are various mugshots and a full-body photo, which were sent as attachments to the email found on the page Bates stamped 5067. | Freedom of Information Act 5 U.S.C. § |

| | | | |
|---|---|---|---|
| | | **Redacted Information:** These identifying photos were withheld in full pursuant to FOIA Exemptions (b)(6) and (b)(7)(C).<br><br>**Reason(s) for Redactions:** Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names, PII, biometric information, contact information, immigration history, and/or other identifying information of third-party individuals could reasonably be expected to constitute an unwarranted invasion of these individuals' personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII. | 552 (b)(6), (b)(7)(C) |
| 5653-5655 | Partial | **Document Title:** Email titled "FW: [Name]"<br><br>**Document Description:** These are emails between a Probation Officer from Clackamas County Community Corrections and ERO regarding third-party individuals.<br><br>**Redacted Information:** One sentence in this document was withheld pursuant to FOIA Exemption (b)(7)(E). ICE would like to withdraw the (b)(5) designation applied to the redaction.<br><br>**Reason(s) for Redactions:** The information within these emails was properly withheld under FOIA exemption (b)(7)(E) because it is law enforcement sensitive. FOIA Exemption (b)(7)(E) exempts from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of *exactly* what kind information local LE probation officers gives ICE ERO could permit people seeking to interfere with law enforcement investigations and/or operations to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The release of this specific information could reveal techniques and/or procedures for law enforcement investigations or prosecutions; disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law; or reveal the existence of investigations or files | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E) |

| | | on a third-party individual. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
|---|---|---|---|
| 6882-6883 | Partial | **Document Title**: Email titled "RE: [A-number]"<br><br>**Document Description:** These are three emails between an ICE ERO DO and their supervisor requesting permission to conduct a courthouse arrest. Supervisor permission is required to conduct a courthouse arrest. All emails concern the same third-party individual and include their immigration and criminal history.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemption (b)(5). FOIA Exemption (b)(7)(E) should also have been asserted for the redacted information.<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct a courthouse arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location. These plans contain a recommendation for agency action, and a supervisor response. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.<br><br>FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
|---|---|---|---|
| 8754-8757, 11505-11507 | Partial | **Document Title**: Email titled "FW: Case [A-number]"<br><br>**Document Description:** This document contains emails between Enforcement and Removal Operations ("ERO") officers in the Portland sub-office in the Seattle Area of Responsibility ("AOR") concerning the immigration history, criminal history, and ICE detainer for a juvenile alien. The emails describe specific plans for an ICE arrest in a courthouse setting, how it will be recorded by ICE in ICE databases, any necessary coordination with the Office of Refugee Resettlement of Health and Human Services, and who will be assisting with the arrest.<br><br>**Redacted Information:** The pages are withheld in part under FOIA Exemption (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct a courthouse arrest, (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location; and (3) any outside coordination efforts taken by ICE to ensure the safety of everyone involved. These plans contain a recommendation for agency action based on information known to ERO at the time. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency. | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 8775-8778 | Partial | **Document Title**: Email titled "RE: (No Subject)" <br><br> **Document Description:** This is a series of emails between a detective in the Tualatin Police Department (please note that this information is located in the signature block) and an ICE ERO Officer; the local LEO is asking ICE how an ICE detainer can be placed on the individual, and ICE states that local jails no longer honor detainer, but explains what actions ICE can take upon his release. <br><br> **Redacted Information:** Four sentences were withheld under FOIA Exemption (b)(7)(E). <br><br> **Reason(s) for Redactions:** The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE conducts administrative arrests in jurisdictions that do not honor ICE detainers would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. The information redacted in these sections is limited to specific information (such as where an arrest would take place absent a detainer and how extradition | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E) |

| | | works with California) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
|---|---|---|---|
| 8779-8782 | Partial | **Document Title**: Email titled "Re: Grand jury"<br><br>**Document Description:** This is a series of emails between a detective in the Tualatin Police Department (please note that this information is located in the signature block) and an ICE ERO Officer; the local LEO is asking if ICE is available to appear at a grand jury, and the ICE officer is explaining the protocol necessary for ICE to appear at a grand jury and/or any ICE actions after an individual's release from local jail.<br><br>**Redacted Information:** Six sentences were withheld under FOIA Exemption (b)(7)(E).<br><br>**Reason(s) for Redactions:** The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE conducts administrative arrests in jurisdictions that do not honor ICE detainers would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. The information redacted in these sections is limited to specific information (such as when ICE can appear at a grand jury, who needs to alert ICE of a grand jury appearance request, and the chain of approval needed at ICE for that appearance) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E) |
| 9186-9187 | Partial | **Document Title:**     Email titled "RE: Court approval for [A-number]"<br><br>**Document Description:** These are emails between an ICE ERO DO and their SDDO requesting permission to conduct a courthouse arrest. Supervisor permission is required to conduct a courthouse | Freedom of Information Act 5 U.S.C. § |

| | | arrest. All emails concern the same third-party individual and include their immigration and criminal history.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemptions (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct a courthouse arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location. These plans contain a recommendation for agency action, and a supervisor response. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.<br><br>FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | 552 (b)(5), (b)(7)(E) |

| | | | |
|---|---|---|---|
| 9325-9326 | Partial | **Document Title**: Untitled<br><br>**Document Description:** This is a series of emails between a detective in the Tualatin Police Department (please note that this information is located in the signature block) and an ICE ERO DO. The local LEO is forwarding information on recent convictions to ICE, and also asking ICE a LES question about ICE enforcement. The DO then corresponds with other ERO personnel about potential upcoming administrative arrests.<br><br>**Redacted Information:** This email was partially withheld under FOIA Exemption (b)(7)(E).<br><br>**Reason(s) for Redactions:** The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE conducts administrative arrests in jurisdictions that do not honor ICE detainers would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. The information redacted in these sections is limited to specific information (such as what information local LE shares with ICE and how ICE conveys the information to other ERO personnel) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations, such as evading ERO DOs in the field. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E) |
| 9526-9528 | Partial | **Document Title**:  Email titled "RE: Request to arrest after court"<br><br>**Document Description:** These are emails between an ICE ERO DO and their SDDO requesting permission to conduct a courthouse arrest. Supervisor permission is required to conduct a courthouse arrest. All emails concern the same third-party individual and include their immigration and criminal history.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemption (b)(7)(E). | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E) |

| | | |
|---|---|---|
| | | **Reason(s) for Redactions:** The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 9620-9626 | Partial | **Document Title:** Email titled "RE: Enforcement Action Request - DACA recipient - CURRENT [Name, A-number]"<br><br>**Reason(s) for Redactions: Document Description:** These documents are emails between an ICE ERO DO and their AFOD, and that AFOD and the FOD, about the DO requesting permission to arrest a third-party individual who has status under DACA. Supervisor permission is required to conduct an arrest on a DACA recipient. These emails contain multiple instances of the supervisors requesting more information or clarification from the DO, and includes their opinions and recommendations for agency action.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemptions (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br><br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from an ERO DO to his ERO supervisors lays out the reasons underlying the decision to conduct this arrest and then answers specific questions about his rationale. Their supervisors reply with opinions and recommendations, as well as requests for further information and actions. Such pre-decisional and deliberative information is expressly protected by | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | | |
|---|---|---|---|
| | | FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)  Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.<br><br>FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts sensitive arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States.  The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 9646-9648, 11155-11157 | Partial | **Document Title**:  Email titled "RE: ICE Arrest of DACA Recipient in Portland"<br><br>**Document Description:**  These are emails between ERO personnel, ICE OPLA attorneys, and ICE OPA in Seattle regarding the ICE arrest of a DACA recipient.  The emails contain proposed public statements (and proposed edits), the arrested individual's PII and criminal and immigration history, and thoughts, opinions, recommendations, and questions from various ICE personnel and attorneys.<br><br>**Redacted Information:** These emails were partially withheld pursuant to FOIA Exemption (b)(5).  Please note that ICE would like to lift the FOIA Exemption (b)(7)(E) applied to the redactions.<br><br>**Reason(s) for Redactions:**  The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative as well as attorney-client privileged. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| | | This email is pre-decisional and deliberative. It contains (1) edits and recommendations on a proposed public statement from ICE, (2) questions from OPA to ERO about the arrest to coordinate responses, and (3) recommendations for agency actions. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.) Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency. | |
| | | Secondly, the attorney-client privilege is also applicable to the portions of these records. Communications between OPLA attorneys and their ERO clients were necessary for ERO to obtain legal guidance from their attorneys. The response emails state OPLA's opinions and guidance to ERO. This information is direct advice to the client and does not contain any information about ICE's position in the legal case or its agency policy. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his or her legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel. | |
| 9660-9663 | Partial | **Document Title**: Email titled "RE: RELEASE: Portland "Dreamer" in ICE Detention<br><br>**Document Description:** These emails between the FOD and ICE employee (unknown office) discussing officer accounts of an administrative arrest by ICE ERO. The information contains unverified statements and the officer's thoughts and opinions on the issue.<br><br>**Redacted Information:** The information in this document are withheld in part pursuant to FOIA Exemption (b5). Please note that ICE would like to lift the FOIA Exemption (b)(7)(E) applied to the redactions. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| | | **Reason(s) for Redactions:** The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email contains the recollections and narratives from various ICE ERO officers, including their opinions about certain actions. The ERO employee is also voicing their own opinions on the situation. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.) | |
|---|---|---|---|
| 9745-9749 | Partial | **Document Title:** Email titled "FW: Time Sensitive KATU Media Inquiry"<br><br>**Document Description:** These are emails between ERO personnel and ICE OPA in Seattle regarding the ICE arrest of a DACA recipient. The email mostly concerns what information is known and edits to an executive summary going to ICE senior leadership. The paragraph withheld is legal advice from OPLA being conveyed by an ERO employee.<br><br>**Redacted Information:** These emails were partially withheld pursuant to FOIA Exemption (b)(5). Please note that ICE would like to lift the FOIA Exemption (b)(7)(E) applied to the redactions.<br><br>**Reason(s) for Redactions:** The information in these pages was properly withheld under FOIA exemption (b)(5) because it is attorney-client privileged. In this paragraph, an ERO employee is passing along advise from ICE OPLA that is relevant to the ERO discussion happening. Information cut and pasted from OPLA to other ERO employees was necessary for ERO to perform a proper analysis of the current situation. The information is direct advice to the client and does not contain any information about ICE's position in the legal case or its agency policy. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his or her legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| | | | |
|---|---|---|---|
| 9772-9775, 11199-11201 | Partial | **Document Title**:  Email titled "RE: URGENT: Proposed draft statement"<br><br>**Document Description:**  These are emails between an ERO DFOD and FOD and ICE OPA in Seattle regarding an ICE arrest that has gained media attention.  The emails contain proposed public statements (and proposed edits) and thoughts, opinions, and recommendations between the DFOD and FOD.<br><br>**Redacted Information:** These emails were partially withheld pursuant to FOIA Exemption (b)(5).<br><br>**Reason(s) for Redactions:**  The information in these pages was properly withheld under FOIA exemption (b)(5) because it is draft, pre-decisional, and deliberative.  It contains (1) edits and recommendations on a proposed public statement from ICE and (2) a candid conversation between the DOFD and FOD expressing their thoughts, opinions, and recommendations on how ICE should respond to the media inquiry, what ICE can do moving forward regarding training, and what actions they should take regarding the officers involved in the incident.  Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |
| 9776-9781, 11217-11222 | Partial | **Document Title**:  Email titled "RE: URGENT MEDIA PRIVACY - Oregon Reporters on Detention of Former DACA Recipient"<br><br>**Document Description:**  A news station reached out to ICE OPA regarding an ACLU public statement about an ICE administrative arrest and asked ICE to verify its accuracy.  In responding emails, the FOD and other ERO employees both offered edits to the proposed statement.  Also, the FOD evaluated various sentences from the ACLU statement, providing clarifying information or requesting more information.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemption (b)(5).<br><br>**Reason(s) for Redactions:**  The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative.  This email from an ERO FOD to OPA lays out various information, history, and opinions about ICE ERO activities and authorities.  The information is being | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| | | provided to OPA so that OPA can make a public statement containing that information. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the situation and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.) Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency. | |
|---|---|---|---|
| 9820-9822, 11242-11244 | Partial | **Document Title**: Email titled "FW: [ACLU filming ICE officers during arrest 5/22/2017] FW: FOW for 5/22/2017"<br><br>**Document Description:** This is an email between an ERO DO and the supervisory SSDO about a courthouse arrest. The original emails contain the plan for the administrative arrest; a follow-up email contains the DO's narrative about an encounter with ACLU legal observers. The narrative contains their recollections, impressions, and characterizations of the encounter.<br><br>**Redacted Information:** The narrative by the DO to his supervisor was withheld pursuant to FOIA exemption (b)(5). One sentence about the arrest plan was withheld under (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br><br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from the DO to their supervisor lays out recollections, impressions, and characterizations of an encounter with oppositional members of the ACLU, and requests input from his supervisor on next steps and direction. Such pre-decisional and deliberative exchange between employees is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.<br><br>FOIA exemption (b)(7)(E):  The sentence concerning the arrest plan was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States.  Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents.  ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 9907-9915, 11162-11167, 11262-11270 | Partial | **Document Title**:   Email titled "RE: Oregon Courthouse Encounter"<br><br>**Document Description:**  This email chain was sparked by an email from a local news station that asked the ICE Western Regional Communications Director for information on ERO operational activities.  The subsequent emails involve conversations between the news station and the Western Regional Communications Director clarifying the statements, and then conversations between ERO personnel about the wording of a public statement from ICE that contain the employees' thoughts, opinions, and ideas for editing the statement.<br><br>**Redacted Information:**  The names and/or contact information of ICE employees and the third-party individual were withheld pursuant to FOIA exemptions (b)(6) and (b)(7)(C).  The discussions between ERO personnel about the public statement and its accuracy were withheld pursuant to FOIA exemption (b)(5). | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C) |

**Reason(s) for Redactions:**

FOIA Exemptions (b)(6) and (b)(7)(C): Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names and contact information of ICE personnel could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.

Similarly, under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of PII of third-party individuals could reasonably be expected to constitute an unwarranted invasion of these individuals' personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII.

FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This emails between ERO personnel contain their thoughts and opinions on proposed public statement and on the accuracy of statements made by local law enforcement and the ACLU's allegations; their thoughts, opinions, and ideas for editing any public statement for ICE; and what information should be released with the statement. The emails contain candid statements and opinions and suggest future actions and statements. Such pre-decisional and deliberative exchanges between employees about these matters are expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.

| | | |
|---|---|---|
| | | **Document Title**: Email titled "RE: Statement by Multnomah County"<br><br>**Document Description:** This email chain was sparked by an email from a local news station that asked the ICE Western Regional Communications Director for information on ERO operational activities in Multnomah County courthouses. The subsequent emails involve conversations between the news station and the Western Regional Communications Director personnel clarifying the allegations, and then conversations between various ERO personnel (including the Communications Director and the FOD) about the wording of a public statement and other proposed public responses from ICE that contain the employees' thoughts, opinions, and ideas for editing the statement.<br><br>**Redacted Information:** The discussions between ERO personnel about the public statement(s) were withheld pursuant to FOIA exemption (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This emails between ERO personnel contain their thoughts and opinions on proposed public statement(s) in response to allegations from the local ACLU chapter; their thoughts, opinions, and ideas for editing any public statement(s) for ICE; and what information should be released with the statement(s). The emails contain candid statements and opinions and suggest future actions and statements. Such pre-decisional and deliberative exchanges between employees about these matters are expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.<br><br>FOIA exemption (b)(7)(E): The sentence concerning the arrest plan was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a | |
| 9928-9939, 11277-11286 | Partial | | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | | |
|---|---|---|---|
| | | civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents.  ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 10087-10090 | Partial | **Document Title**:    Email title "RE: Case [Identifier]"

**Document Description:**  In this email, a DO is contacting other ICE ERO personnel in his AOR to get assistance on a courthouse arrest.

**Redacted Information:** The plan for the courthouse arrest was withheld under FOIA Exemption (b)(7)(E).

**Reason(s) for Redactions:**  The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States.  Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents.  ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | | |
|---|---|---|---|
| 10111-10113, 11527-11528, 11529-11530 | Partial | **Document Title**:    Email titled "RE: FOW [A-number] DACA Case"<br><br>**Reason(s) for Redactions:  Document Description:** These are emails between an ICE ERO DO and their DFOD asking permission to conduct a courthouse arrest.  Supervisor permission is required to conduct a courthouse arrest.  All emails concern the same third-party individual and include their immigration and criminal history.<br><br>**Redacted Information:** The third party's history and the DO's reason for arrest and his arrest plan were withheld in part pursuant to FOIA Exemptions (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative.  This email from an ERO officer to his ERO supervisor lays out (1) the reasons underlying the decision to conduct a courthouse arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location.  These plans contain a recommendation for agency action based on information known to ERO at the time.   Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)<br><br>FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States.  Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | alien(s), and ICE officers and agents.  ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |

| | | | |
|---|---|---|---|
| 10134 | Partial | **Document Title**:    Email titled "RE: FOW for 05/01/2017"<br><br>**Document Description:** This is a DO's email to other ERO personnel that explains the plan for an administrative arrest.<br><br>**Redacted Information:** The specific plan for the arrest and the DO's stated reason for the arrest were withheld in part pursuant to FOIA Exemptions (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative.  This email from an ERO officer to fellow ERO personnel lays out (1) the reasons underlying the decision to conduct this arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest.  These plans contain a recommendation for agency action based on information known to ERO at the time.  Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.<br><br>FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States.  Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents.  ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
|---|---|---|---|
| 10162-10167 | Partial | **Document Title**:     Email titled "RE: [Name] - Illegal Alien Mexican Felony Parole or Probation Violator"<br><br>**Document Description:**  This is an email from a third-party about his experience with a man who was later charged with a misdemeanor offense.   The email was forwarded to ICE, as the person expressed concern that the man in question lacked legal immigration status.  The subsequent emails concern ICE's conversations on what next steps should be taken and ERO personnel's opinions on the letter writer.<br><br>**Redacted Information:** These emails were partially withheld pursuant to FOIA Exemption (b)(5).<br><br>**Reason(s) for Redactions:** The information in this document is properly withheld under FOIA Exemption (b)(5) because it is pre-decisional and deliberative.  The document is a deliberative email from a FOD to ERO managers instructing them to perform certain checks in response to a tip from a citizen.  The emails also contain the opinions and recommendations of various ERO personnel.  The pertinent information regarding what actions ICE actually took were released in full; only opinions and suggestions were withheld.   FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these documents.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.  The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |
| 10254-10255 | Partial | **Document Title**: Email titled "RE: Court arrest on [A-number]"<br><br>**Reason(s) for Redactions:  Document Description:** These are emails between an ICE ERO DO and their AFOD asking permission to conduct a courthouse arrest.  Supervisor permission is required to conduct a courthouse arrest.  All emails concern the same third-party individual and include their immigration and criminal history.<br><br>**Redacted Information:** Specific arrest plans were withheld under (b)(7)(E). | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E) |

| | | | |
|---|---|---|---|
| | | **Reason(s) for Redactions:**  The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States.  Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents.  ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 10285-10287 | Partial | **Document Title**:    Email title "RE: Case [Identifier]"

**Document Description:**  This document contains emails between ERO officers and state LEOs concerning the immigration history, criminal history, and ICE detainer for a juvenile in Beaverton Police Department's custody.   The emails describe specific plans for an ICE arrest in a courthouse setting, how it will be recorded by ICE in ICE's databases, and who will be assisting with the arrest.

**Redacted Information:** The information in this document is withheld in part pursuant to FOIA Exemption (b)(7)(E).

**Reason(s) for Redactions:**    The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States.  Courthouse arrests are only used when ICE has ascertained that it is the best way | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E) |

| | | to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
|---|---|---|---|
| 10293-10294 | Partial | **Document Title:** Email titled "RE: [A-number] Requesting court arrest" <br><br> **Reason(s) for Redactions: Document Description:** These are emails between an ICE ERO DO and their AFOD asking permission to conduct a courthouse arrest. Supervisor permission is required to conduct a courthouse arrest. All emails concern the same third-party individual and include their immigration and criminal history. <br><br> **Redacted Information:** Specific arrest plans were withheld in part under (b)(7)(E). <br><br> **Reason(s) for Redactions:** The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E) |

| | | | |
|---|---|---|---|
| 10585 | Partial | **Document Title**: Untitled<br><br>**Document Description:** This is a mugshot, which was sent as an attachment to the email found on the page Bates stamped 10584.<br><br>**Redacted Information:** This mugshot was withheld in part pursuant to FOIA Exemptions (b)(6) and (b)(7)(C). ICE would like to withdraw the (b)(7)(E) redaction.<br><br>**Reason(s) for Redactions:** Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names, PII, biometric information, contact information, immigration history, and/or other identifying information of third-party individuals could reasonably be expected to constitute an unwarranted invasion of these individuals' personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII. | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |
| 10803-10808 | Partial | **Document Title**: Email titled "RE: Court Arrest Approval"<br><br>**Document Description:** These are emails between an ICE ERO DO and a Washington County LEO about a third-party individual, and the DO and their supervisor asking permission to conduct a courthouse arrest. Supervisor permission is required to conduct a courthouse arrest. All emails concern the same third-party individual and include their immigration and criminal history.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemptions (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct a courthouse arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location. These | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | plans contain a recommendation for agency action based on information known to ERO at the time. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.) Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.

FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while ensuring safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 10809 | Partial | **Document Title**: Email titled "RE: Court Arrest Approval"<br><br>**Document Description:** These are emails between an ICE ERO DO and their AFOD asking permission to conduct a courthouse arrest. Supervisor permission is required to conduct a courthouse arrest. All emails concern the same third-party individual and include their immigration and criminal history. | Freedom of Information Act 5 U.S.C. § |

| | | **Redacted Information:** One sentence was withheld pursuant to FOIA Exemption (b)(5) and (b)(7)(E). | 552<br>(b)(7)(E) |
|---|---|---|---|
| | | **Reason(s) for Redactions:** | |
| | | FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct a courthouse arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location. These plans contain a recommendation for agency action based on information known to ERO at the time. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.) Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency. | |
| | | FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement | |

| | | operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
|---|---|---|---|
| 10991 | Partial | **Document Title**: Email titled "[Name]"<br><br>**Document Description:** This is a mugshot, which was sent from a local sheriff's office to an ICE employee.<br><br>**Redacted Information:** This mugshot was withheld in part pursuant to FOIA Exemptions (b)(6) and (b)(7)(C). The URL for the database was withheld pursuant to FOIA Exemption (b)(7)(E).<br><br>**Reason(s) for Redactions:** The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. FOIA Exemption (b)(7)(E) exempts from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of this URL could permit people seeking to interfere with law enforcement investigations and/or operations to take proactive steps to counter operational and investigative actions taken by ICE and/or local LE. The release of internal URLs could reveal techniques and/or procedures for law enforcement investigations or prosecutions or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law. Disclosure of this information could assist third parties in attempts to hack into, alter, and/or manipulate law enforcement databases, were they to gain access to the system. Disclosure of these techniques and practices in navigating the databases could assist those people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by local LE but altering the contents of a database used to identify suspects and criminals. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E) (b)(6), (b)(7)(C) |
| 11115 | Partial | **Document Title**: Email titled "RE: After court arrest"<br><br>**Document Description:** These are emails between an ICE ERO DO and their AFOD asking permission to conduct a courthouse arrest. Supervisor permission is required to conduct a courthouse arrest. All emails concern the same third-party individual and include their immigration and criminal history.<br><br>**Redacted Information:** These emails are withheld in part pursuant to FOIA Exemption (b)(7)(E). ICE would also like to assert FOIA Exemption (b)(5). | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

**Reason(s) for Redactions:**

**FOIA Exemptions (b)(5):** The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative.  This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct a courthouse arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location.  These plans contain a recommendation for agency action based on information known to ERO at the time.   Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)  Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.

**FOIA Exemptions (b)(7)(E):** The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States.  Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents.  ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.

| | | **Document Title**: Email titled "RE: FOW [A-number] Request for Court Arrest for Today" | |
|---|---|---|---|
| 11119 | Partial | **Document Description:** These are emails between an ICE ERO DO and their AFOD asking permission to conduct a courthouse arrest. Supervisor permission is required to conduct a courthouse arrest. All emails concern the same third-party individual and include their immigration and criminal history.<br><br>**Redacted Information:** These emails are withheld in part pursuant to FOIA Exemption (b)(7)(E). ICE would also like to assert FOIA Exemption (b)(5).<br><br>**Reason(s) for Redactions:**<br><br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct a courthouse arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location. These plans contain a recommendation for agency action based on information known to ERO at the time. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.) Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.<br><br>FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | | |
|---|---|---|---|
| | | inside the United States.  Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents.  ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 11840 | Partial | **Document Title**:  Email titled "ICE/PRS [A-number] [Name]"<br><br>**Document Description:** This is an email between a local LEO and an ICE employee.  The local LEO's signature line is not readable but it appears that they came from Multnomah County based on the email address.  The email concerns how the local LEO will collaborate with ICE on law enforcement arrest plans.<br><br>**Redacted Information:** These emails are withheld in part pursuant to FOIA Exemption (b)(7)(E).   ICE would like to lift any redactions made pursuant to FOIA Exemption (b)(5).<br><br>**Reason(s) for Redactions:**   The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  This Exemption protects from release information from disclosure that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts administrative arrests with local LE agencies would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States.  The information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E) |

| | | | |
|---|---|---|---|
| 13055 | Partial | **Document Title**: ERO Escort Card, Proof 3<br><br>**Document Description:** These are proposed layouts for an ERO Escort Card, which is a quick guide for ERO officers escorting third-party individuals to their repatriation country. More information about ERO escorts can be found at https://www.ice.gov/news/releases/what-are-high-profile-removals.<br><br>**Redacted Information:** These emails are withheld in part pursuant to FOIA Exemption (b)(7)(E). ICE would also like to assert FOIA Exemption (b)(5).<br><br>**Reason(s) for Redactions:**<br><br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This is a draft layout proposal for an ERO informational card. They contain edits and are marked as DRAFT. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. Further, since this document contains proposals for agency documents, which may not have been adopted in this form, release of this document may create confusion regarding what positions have actually been adopted by the agency.<br><br>FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE escorts removed individuals (especially on commercial flights) would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. The information redacted in these sections is limited to specific information (such as official phone numbers that officers should call if they encounter problems) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E) |

| | | | |
|---|---|---|---|
| | | serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 13479 | Partial | **Document Title**:  Email titled "RE: Multnomah County Court Arrest"<br><br>**Reason(s) for Redactions:  Document Description:** These are three emails between an ICE ERO DO and their supervisor asking permission to conduct a courthouse arrest.  Supervisor permission is required to conduct a courthouse arrest.  All emails concern the same third-party individual and include their immigration and criminal history.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemptions (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br><br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative.  This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct a courthouse arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location.  These plans contain a recommendation for agency action based on information known to ERO at the time.   Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)  Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.<br><br>FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

<table>
<tr>
<td></td>
<td></td>
<td>disclosure of why and exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States.  Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents.  ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.</td>
<td></td>
</tr>
<tr>
<td>13499-13503</td>
<td>Partial</td>
<td>

**Document Title**:   Email titled "RE: Multnomah County Court Arrest"

**Reason(s) for Redactions:  Document Description:** These are three emails between an ICE ERO DO and their supervisor asking permission to conduct a courthouse arrest.  Supervisor permission is required to conduct a courthouse arrest.  All emails concern the same third-party individual and include their immigration and criminal history.

**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemptions (b)(5) and (b)(7)(E).

**Reason(s) for Redactions:**

FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative.  This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct a courthouse arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location.  These plans contain a recommendation for agency action based on information known to ERO at the time.   Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the</td>
<td>Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E)</td>
</tr>
</table>

| | | | |
|---|---|---|---|
| | | case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)  Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.<br><br>FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States.  Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents.  ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 14211 | Partial | **Document Title**:  Email titled "RE: [A-number]<br><br>**Reason(s) for Redactions:  Document Description:** These are emails between an ICE ERO DO and their AFOD asking permission to conduct a courthouse arrest.  Supervisor permission is required to conduct a courthouse arrest.  All emails concern the same third-party individual and include their immigration and criminal history.<br><br>**Redacted Information:** These emails are withheld in part pursuant to FOIA Exemption (b)(7)(E).   ICE would also like to assert FOIA Exemption (b)(5). | Freedom of Information Act 5 U.S.C. § 552  (b)(5), (b)(7)(E) |

**Reason(s) for Redactions:**

FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This is a draft layout proposal for an ERO informational card. They contain edits and are marked as DRAFT. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. Further, since this document contains proposals for agency documents, which may not have been adopted in this form, release of this document may create confusion regarding what positions have actually been adopted by the agency.

FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.

| 14325-14326 | Partial | **Document Title**: Photos of a cellphone screen<br><br>**Document Description:** These are a series of text messages between two people; it is not clear who they are or where they work. They are discussing where a particular third-party individual is in a courthouse. The individual's LES numerical identifier is used in one message.<br><br>**Redacted Information:** A LES identifier was withheld under FOIA Exemption (b)(7)(E).<br><br>**Reason(s) for Redactions:** The LES identifier on this page was properly withheld under FOIA exemption (b)(7)(E) because it is law enforcement sensitive. FOIA Exemption (b)(7)(E) exempts from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of this type of information could permit people seeking to interfere with law enforcement investigations and/or operations to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The release of these types of LES identifiers could reveal techniques and/or procedures for law enforcement investigations or prosecutions; disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law; or reveal the existence of investigations or files on a third-party individual that would otherwise not be publicly known or acknowledged. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E) |

| | | | |
|---|---|---|---|
| 14567-14571, 14572-14574, 15848-15852, 15853-15857, 19559-19563, 19564-19568, 19569-19571 | Partial | **Document Title**: Memos from ERO DOs to the DFOD, titled "Events of January 31, 2017"<br><br>**Document Description:** This are narratives from three ERO DOs regarding an administrative arrest at or near the Multnomah County Circuit Court on January 31, 2017, told in their own words based on their own experience. While attempting to conduct an arrest at the courthouse, the ERO officers were confronted by a judge in the courthouse.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemption (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. The DFOD of ERO-Seattle requested that any ERO officer present for the administrative arrest on January 31, 2017 should write a personal narrative about the incident and submit the narrative for personnel record reasons. The ERO officers then wrote short narratives containing their recollections and opinions about what occurred. FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)<br><br>FOIA exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
|---|---|---|---|
| 14610-1612, 19615-19617 | Partial | **Document Title:** Email titled "RE: Draft OPA - Astoria Newspaper on Courthouse Arrest"<br><br>**Document Description:** This email chain was sparked by an email from a local news station in Astoria, Oregon that asked the ICE Western Regional Communications Director for information on ERO operational activities near the Clapsop Circuit County Courthouse. The subsequent emails involve conversations between the news station and ICE personnel clarifying the statements, and then conversations between ERO personnel about the wording of a public statement from ICE that contain the employees' thoughts, opinions, and ideas for editing the statement.<br><br>**Redacted Information:** The discussions between ERO personnel about the public statement and its accuracy were withheld pursuant to FOIA exemption (b)(5).<br><br>**Reason(s) for Redactions:** The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This emails between ERO personnel contain their thoughts and opinions on proposed public statement and on the accuracy of statements made by local law enforcement and the ACLU's allegations; their thoughts, opinions, and ideas for editing any public statement for ICE; and what information should be released with the statement. The emails contain candid statements and opinions and suggest future actions and statements. Such pre-decisional and deliberative exchanges between employees about these matters are expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| | | | |
|---|---|---|---|
| 14678-14679 | Partial | **Document Title**:  Email titled "04/24/2017 Clackamas County GEO run"<br><br>**Document Description:** This is an email from a DO for her supervisor that recounts an argument that occurred between ERO personnel and GEO personnel regarding the transporting of arrested individuals arrested at or near courthouses.  The narrative accounts for phone calls, texts, and conversations between the parties.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemptions (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative.  This email from an ERO officer to his ERO supervisors lays out (1) what happened during an operational snafu that occurred while conducting ERO operations and (2) reasons for the ERO employee's actions. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)<br><br>FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests, and exactly how individuals are transferred into custody to contracted detention facilities, would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents.  ICE has released extensive information at | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | | |
|---|---|---|---|
| | | https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand, and how individuals are transported to local detention centers) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 14688 | Partial | **Document Title**: Email titled "RE: [Name]"<br><br>**Reason(s) for Redactions: Document Description:** These are emails between an ICE ERO DO to the other DOs that will be assisting on a courthouse arrest. The email details the plan for the arrest and is meant to coordinate actions within the team. All emails concern the same third-party individual and include their immigration and criminal history.<br><br>**Redacted Information:** These emails are withheld in part pursuant to FOIA Exemption (b)(7)(E).<br><br>**Reason(s) for Redactions:** The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E) |

| | | | |
|---|---|---|---|
| 14901-14902 | Partial | **Document Title**:  Email titled "Court visitation Request"<br><br>**Reason(s) for Redactions:  Document Description:** These are emails between an ICE ERO DO and their AFOD asking permission to conduct a courthouse arrest.  Supervisor permission is required to conduct a courthouse arrest.  All emails concern the same third-party individual and include their immigration and criminal history.<br><br>**Redacted Information:** These emails are withheld in part pursuant to FOIA Exemption (b)(7)(E).  ICE would also like to assert FOIA Exemption (b)(5).<br><br>**Reason(s) for Redactions:**<br><br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative.  This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct a courthouse arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location.  These plans contain a recommendation for agency action based on information known to ERO at the time.   Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)  Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.<br><br>FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | |
|---|---|---|
| | | laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States.  Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents.  ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 14907 | Partial | **Document Title**:  Email titled "RE: Court arrest"<br><br>**Reason(s) for Redactions:  Document Description:** These are emails between an ICE ERO DO and their AFOD asking permission to conduct a courthouse arrest.  Supervisor permission is required to conduct a courthouse arrest.  All emails concern the same third-party individual and include their immigration and criminal history.<br><br>**Redacted Information:** These emails are withheld in part pursuant to FOIA Exemption (b)(7)(E).   ICE would also like to assert FOIA Exemption (b)(5).<br><br>**Reason(s) for Redactions:**<br><br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative.  This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct a courthouse arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location.  These plans contain a recommendation for agency action based on information known to ERO at the time.   Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not | Freedom of Information Act 5 U.S.C. § 552  (b)(5), (b)(7)(E) |

| | | possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.) Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.<br><br>FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 15354 | Partial | **Document Title**: Email titled "Request for Police Report 16-20695"<br><br>**Document Description:** This email is from a DO to local LE agency for a police file.<br><br>**Redacted Information:** Two LES identifiers were withheld under FOIA Exemption (b)(7)(E).<br><br>**Reason(s) for Redactions:** The LES identifiers on this page were properly withheld under FOIA exemption (b)(7)(E) because it is law enforcement sensitive. FOIA Exemption (b)(7)(E) exempts from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of this type of information could permit people seeking to interfere with law enforcement investigations and/or operations to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The release of such LES identifiers could reveal techniques | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E) |

| | | and/or procedures for law enforcement investigations or prosecutions; disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law; or reveal the existence of investigations or files on a third-party individual that would otherwise not be publicly known or even acknowledged. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
|---|---|---|---|
| 15499 | Partial | **Document Title**: Email titled "Courthouse proximity arrest 6/23/17"<br><br>**Reason(s) for Redactions: Document Description:** These are emails between an ICE ERO DO and their AFOD asking permission to conduct a courthouse arrest. Supervisor permission is required to conduct a courthouse arrest. All emails concern the same third-party individual and include their immigration and criminal history.<br><br>**Redacted Information:** These emails are withheld in part pursuant to FOIA Exemption (b)(7)(E). ICE would also like to assert FOIA Exemption (b)(5).<br><br>**Reason(s) for Redactions:**<br><br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct a courthouse arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location. These plans contain a recommendation for agency action based on information known to ERO at the time. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.) Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency. | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States.  Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents.  ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |

| | | |
|---|---|---|
| 15561, 20828 | Partial | **Document Title**: Email titled "Interim Policy re: courthouses"<br><br>**Document Description:** This is an email from the Deputy Assistant Director of the Fugitive Operations and Training Division of ERO, letting certain ERO managers know that ICE was working to develop guidance for courthouse arrests. It includes direction to the managers on how to handle courthouse arrests in the interim time.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemptions (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from an ERO manager to other managers explaining ICE's policy development and providing guidance for the present time. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.<br><br>FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | |
|---|---|---|
| | | proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 15563 | Partial | **Document Title**: Email titled "[A-number]"<br><br>**Document Description:** These are emails between an ICE ERO DO and their AFOD asking permission to conduct a courthouse arrest. Supervisor permission is required to conduct a courthouse arrest. All emails concern the same third-party individual and include their immigration and criminal history.<br><br>**Redacted Information:** These emails are withheld in part pursuant to FOIA Exemption (b)(7)(E). ICE would also like to assert FOIA Exemption (b)(5).<br><br>**Reason(s) for Redactions:**<br><br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct a courthouse arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location. These plans contain a recommendation for agency action based on information known to ERO at the time. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.) Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.<br><br>FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
|---|---|---|---|
| 15566-15567 | Partial | **Document Title**: Email titled "[A-number]" <br><br> **Document Description:** These are emails between an ICE ERO DO and their AFOD asking permission to conduct a courthouse arrest. Supervisor permission is required to conduct a courthouse arrest. All emails concern the same third-party individual and include their immigration and criminal history. <br><br> **Redacted Information:** These emails are withheld in part pursuant to FOIA Exemption (b)(7)(E). ICE would also like to assert FOIA Exemption (b)(5). <br><br> **Reason(s) for Redactions:** <br><br> FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct a courthouse arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location. These plans contain a recommendation for agency action based on information known to ERO at the time. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)  Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.

FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States.  Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents.  ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.

| 15570-15571 | Partial | **Document Title**:  Email titled "[A-number]"<br><br>**Document Description:** These are emails between an ICE ERO DO and their AFOD asking permission to conduct a courthouse arrest.  Supervisor permission is required to conduct a courthouse arrest.  All emails concern the same third-party individual and include their immigration and criminal history.<br><br>**Redacted Information:** These emails are withheld in part pursuant to FOIA Exemption (b)(7)(E).   ICE would also like to assert FOIA Exemption (b)(5). | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

**Reason(s) for Redactions:**

FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative.  This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct a courthouse arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location.  These plans contain a recommendation for agency action based on information known to ERO at the time.   Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)  Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.

FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States.  Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents.  ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.

| | | |
|---|---|---|
| 15803-15805, 15806-15808, 20935-20937 | Partial | **Document Title**: Memos from an ERO DO to the AFOD, both titled "Events Involving [Name]"

**Document Description:** This are two narratives from ERO DOs regarding an administrative arrest at or near the Multnomah County Circuit Court on or near March 30, 2017, told in their own words based on their own experience. While attempting to conduct an arrest at the courthouse, the ERO officers were confronted by a public defender in the courthouse.

**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemption (b)(5) and (b)(7)(E).

**Reason(s) for Redactions:**
FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. The AFOD of ERO-Seattle requested that any ERO officer present for the administrative arrest in late March should write a personal narrative about the incident and submit the narrative for personnel record reasons. The ERO officers then wrote short narratives containing their recollections and opinions about what occurred. FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)

FOIA exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
|---|---|---|---|
| 15809-15810 | Partial | **Document Title**: Email titled "Incident / Complaint involving Defense Attorney"<br><br>**Document Description:** In this email, an AFOD emailed the FOD to correct the accuracy of statements made by the public defender (who is mentioned in the previous *Vaughn* entry, above).<br><br>**Redacted Information:** These emails are withheld in part pursuant to FOIA Exemption (b)(7)(E).<br><br>**Reason(s) for Redactions:** The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Here an AFOD is discussing why statements made so not match up with policy and procedures, and any recommendations or observations about the protocols in place. This narrative includes numerous details about how ICE ERO conducts arrests. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as how many officers are present and what they are wearing) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E) |

| | | | |
|---|---|---|---|
| 15820-15822 | Partial | **Document Title**: Untitled<br><br>**Document Description:** This is a narrative from presumably a DO – neither the author nor the recipient is specified. The narrative details an administrative arrest at or near the Multnomah County Justice Center on January 27, 2017, told in their own words based on their own experience. While attempting to conduct an arrest at the courthouse, the subject of the arrest was assisted in evading ERO officers by presumably leaving via an alternate route.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemption (b)(7)(E); FOIA Exemption (b)(5) should also have been asserted.<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. As previous memos have shown, supervisors routinely request ERO to write a personal narrative about any notable incidents and submit the narrative for personnel record reasons. The ERO officer in this case then wrote short narratives containing their recollections and opinions about what occurred. FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)<br><br>FOIA exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | |
|---|---|---|
| | | officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 15823 | Partial | **Document Title**: Email titled "Possible interference with ICE-ERO arrest at Multnomah County Justice Center Court on 01/27/2017"<br><br>**Document Description:** This is an email from the AFOD to the FOD regarding an incident that happened during an attempted administration arrest at the Multnomah County Justice Center on January 27, 2017. The email provides a summary of the incident and lays out next steps for ERO.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemptions (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from an ERO AFOD to the FOD detailing an incident and then providing various avenues for agency actions based on the facts known and information collected from the local U.S. Attorney's Office. These plans contain a recommendation for agency action based on information known to ERO at the time. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.) Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency. | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | | |
|---|---|---|---|
| | | FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 15862-15863 | Partial | **Document Title**: Untitled<br><br>**Document Description:** This is a narrative from presumably a DO – neither the author nor the recipient is specified. The narrative details an administrative arrest at or near the Multnomah County Probation Center on March 27, 2017, told in their own words based on their own experience. While attempting to conduct an arrest at a probation office, the subject of the arrest was not arrested by the probation officer.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemptions (b)(5) and (b)(7)(E); FOIA Exemption (b)(5) should also have been asserted.<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. As previous memos have shown, supervisors routinely request ERO to write a personal narrative about any notable incidents and submit the narrative for personnel record reasons. The ERO officer in this case then wrote short narratives containing their recollections and opinions about what occurred with a local probation officer who was asked to hold an individual for an ICE arrest. FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)<br><br>FOIA exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts arrests at probation centers would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Probation center arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 15886-15888 | Partial | **Document Title**: Email titles "Deferred action request for homicide witness"<br><br>**Document Description:** This is an email between a FOD in Seattle and Staff Officer with the ERO Removal International Operations Unit regarding how an alien can get deferred action if they are going to be a witness in an investigation or trial. The Staff Officer details the process by which deferred action can be pursued and what information and criteria must be met to apply and received deferred action.<br><br>**Redacted Information:** These emails are withheld in part pursuant to FOIA Exemptions (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(5): The information in this document is properly withheld under FOIA Exemption (b)(5) because it is pre-decisional and deliberative. The document is a deliberative email between an ERO employee at headquarters and the Seattle FOD regarding the FOD's inquiry into how to handle a specific | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | | |
|---|---|---|---|
| | | request from a local District Attorney. The Staff Officer is offering up details and advice for how to gain certain immigration benefits. FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these documents. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.

FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE grants deferred actions would disclose law enforcement techniques and procedures used by ICE; the information redacted in these sections is limited to specific information (such as what factors an alien requires to get the status) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 15892-15896 | Partial | **Document Title:** Email titled "Important DACA Info from CIS"

**Document Description:** These are a series of emails between a DO and an Immigration Service Officer at U.S. Citizenship and Immigration Services clarifying the effect of issuing a Notice to Appear ("NTA") to an alien with DACA status. Subsequent emails between ICE ERO personnel pose questions and propose answers to various scenarios involving DACA recipients and ERO operations that could arise.

**Redacted Information:** These emails were withheld in part pursuant to FOIA Exemptions (b)(5) and (b)(7)(E).

**Reason(s) for Redactions:**
FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. The emails between USCIS and ICE ERO and the subsequent emails between ERO personnel, contain analysis about a particular scenario at first and then devolve into theoretical scenarios that could arise in the future. These plans contain a recommendation for agency action based on information known to ERO at the time. Nowhere in the emails is a definitive | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | answer determined for the current or future cases. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)

FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE arrests DACA recipients and how NTA's affected DACA in 2017 would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. The information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 16157-16160, 20736-20739 | Partial | **Document Title**: Email titled "RE: Courthouse arrests"<br><br>**Document Description:** These are emails between the ICE FOD and their AFODs regarding how and when ERO identifies themselves to courthouse staff and/or security. The AFOD and FODs are discussing (1) what has happened in the past in specific courthouses and (2) proposing various potential guidelines going forward for ERO DOs.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemptions (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:** | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. These emails between the AFODs and FOD contain their candid discussions about current procedures and potential changes and proposals for new procedures moving forward. The emails contain recommendations, opinions, and conclusions about how ICE ERO staff should be identifying themselves, but so not create agency policy within this discussion. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.

FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as where and who DOs alert to their presence) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 16178 | Partial | **Document Title**: Email titled "Request for Court Arrest Authorization"

**Document Description:** These are emails between an ICE ERO DO and their AFOD asking permission to conduct a courthouse arrest. Supervisor permission is required to conduct a courthouse arrest. All emails concern the same third-party individual and include their immigration and criminal history.
**Redacted Information:** These emails are withheld in part pursuant to FOIA Exemption (b)(7)(E). ICE | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

would also like to assert FOIA Exemption (b)(5).

**Reason(s) for Redactions:**

FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct a courthouse arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location. These plans contain a recommendation for agency action based on information known to ERO at the time. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.) Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.

FOIA Exemptions (b)(7)(E): information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this

| | | information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
|---|---|---|---|
| 16183 | Partial | **Document Title**:  Email titled "Targeted Enforcements for Monday"<br><br>**Document Description:** These are emails between an ICE ERO AFOD and the FOD informing the FOD of courthouse arrests to take place the next week.  Supervisor permission is required to conduct a courthouse arrest.<br><br>**Redacted Information:** These emails are withheld in part pursuant to FOIA Exemption (b)(7)(E).  ICE would also like to assert FOIA Exemption (b)(5).<br><br>**Reason(s) for Redactions:**<br><br><u>FOIA Exemptions (b)(5):</u> The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative.  This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct a courthouse arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location.  These plans contain a recommendation for agency action based on information known to ERO at the time.   Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)  Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.<br><br><u>FOIA Exemptions (b)(7)(E):</u> The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | |
|---|---|---|
| | | disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 18031-18032 | Partial | **Document Title**:  Email titled " What you missed at the CAP meeting on Monday"<br><br>**Document Description:** This is an email from an ERO employee to other ERO employees who missed a Criminal Alien Program ("CAP") meeting with the AFOD.  The email contains a summary of all topics covered.<br><br>**Redacted Information:** The sections DACA Cases, Court Arrests and DACA Cases, Admin Subpoenas, and Arresting Outside of Jails were withheld in part pursuant to FOIA Exemptions (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative.  In the Court Arrests and DACA Cases, guidance and advice from the FOD is given to ERO DOs.   Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.<br><br>FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts administrative arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Arrests of DACA recipients, courthouse arrests, and other such operational activities require constant oversight and management corrections to continue to be effective and comply with laws. The information redacted in these sections is limited to specific information that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.) | |
|---|---|---|---|
| 18121 | Partial | **Document Title**: Email titled "FW: 2/10/17 Multnomah County Courthouse Op"<br><br>**Document Description:** These are emails between an ICE ERO DO and their AFOD asking permission to conduct a courthouse arrest. Supervisor permission is required to conduct a courthouse arrest. All emails concern the same third-party individual and include their immigration and criminal history.<br><br>**Redacted Information:** These emails are withheld in part pursuant to FOIA Exemption (b)(7)(E). ICE would also like to assert FOIA Exemption (b)(5).<br><br>**Reason(s) for Redactions:**<br><br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct a courthouse arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location. These plans contain a recommendation for agency action based on information known to ERO at the time. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.) Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.

FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.

| 18800 | Partial | **Document Title**: Email titled "Multnomah courthouse arrest 2/10/2017"<br><br>**Reason(s) for Redactions: Document Description:** These are three emails between an ICE ERO DO and their AFOD asking permission to conduct a courthouse arrest. Supervisor permission is required to conduct a courthouse arrest. All emails concern the same third-party individual and include their immigration and criminal history.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemptions (b)(5) and (b)(7)(E). | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

**Reason(s) for Redactions:**

FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative.  This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct a courthouse arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location.  These plans contain a recommendation for agency action based on information known to ERO at the time.   Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)  Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.

FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States.  Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents.  ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.

| | | **Document Title**: Email titled "Multnomah courthouse arrest" | |
|---|---|---|---|
| 18801 | Partial | **Document Description:** These are three emails between an ICE ERO DO and their AFOD asking permission to conduct a courthouse arrest. Supervisor permission is required to conduct a courthouse arrest. All emails concern the same third-party individual and include their immigration and criminal history.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemptions (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct a courthouse arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location. These plans contain a recommendation for agency action based on information known to ERO at the time. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.) Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.<br><br>FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
|---|---|---|---|
| 19134 | Partial | **Document Title**: Email titled "Clackamas County Arrest"<br><br>**Reason(s) for Redactions:  Document Description:** These are emails between an ICE ERO DO to the other DOs that will be assisting on a courthouse arrest.  The email details the plan for the arrest and is meant to coordinate actions within the team.  All emails concern the same third-party individual and include their immigration and criminal history.<br><br>**Redacted Information:** These emails are withheld in part pursuant to FOIA Exemption (b)(7)(E).  ICE would like to withdraw the FOIA Exemption (b)(5) redaction.<br><br>**Reason(s) for Redactions:**  The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States.  Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents.  ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E) |

| | | **Document Title**: Email titled "RE: [A-number]" | |
|---|---|---|---|
| 19201 | Partial | **Document Description:** These are emails between an ICE ERO DO and their AFOD asking permission to conduct a courthouse arrest. Supervisor permission is required to conduct a courthouse arrest. All emails concern the same third-party individual and include their immigration and criminal history.<br><br>**Redacted Information:** These emails are withheld in part pursuant to FOIA Exemption (b)(7)(E). ICE would also like to assert FOIA Exemption (b)(5).<br><br>**Reason(s) for Redactions:**<br><br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct a courthouse arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location. These plans contain a recommendation for agency action based on information known to ERO at the time. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.) Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.<br><br>FOIA Exemptions (b)(7)(E):<br>The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
|---|---|---|---|
| 19595-19596 | Partial | **Document Title:** Email titled "Authorization for court arrest 11/6/17 The Dalles, Oregon"<br><br>**Reason(s) for Redactions: Document Description:** These are three emails between an ICE ERO DO and their AFOD and FOD asking permission to conduct a courthouse arrest. Supervisor permission is required to conduct a courthouse arrest. All emails concern the same third-party individual and include their immigration and criminal history.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemptions (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br><br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct a courthouse arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location. These plans contain a recommendation for agency action based on information known to ERO at the time. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.) Further, since this document contains proposals for agency | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.

FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
|---|---|---|---|
| 19638 | Partial | **Document Title**:  Email titled "Wasco County Courthouse Incident"

**Document Description:** These are emails between the local DOJ U.S. Attorney's Office and ICE ERO in Portland, Oregon, explaining steps that ICE has taken to counter allegations of misconduct in conducting courthouse arrests.

**Redacted Information:** These emails were partially withheld pursuant to FOIA Exemption (b)(5) and (b)(7)(E).

**Reason(s) for Redactions:**
FOIA Exemptions (b)(5): The information in this document is properly withheld under FOIA Exemption (b)(5) because it is draft, pre-decisional, and deliberative as well as attorney-client privileged.

First, this document contains pre-decisional and deliberative information. It is a deliberative document from a DOJ attorney recommending an agency action. FOIA Exemption (b)(5) was applied to protect the | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these documents. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.

Secondly, the attorney-client privilege is also applicable to the portions of these records. Communications between DOJ attorneys and their client (ICE ERO) were necessary for ERO to ensure the local DOJ office understood how ICE was countering allegations of misconduct allegations of misconduct. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his or her legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel.

FOIA exemptions (b)(7)(E):  The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States.  Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents.  ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.

| | | | |
|---|---|---|---|
| 19689-19690 | Partial | **Document Title**: Email titled "RE: 9am court arrest"<br><br>**Reason(s) for Redactions: Document Description:** These are emails between an ICE ERO DO to the other DOs that will be assisting on a courthouse arrest. The email details the plan for the arrest and is meant to coordinate actions within the team. All emails concern the same third-party individual and include their immigration and criminal history.<br><br>**Redacted Information:** These emails are withheld in part pursuant to FOIA Exemption (b)(7)(E). ICE would like to withdraw the (b)(5) designation.<br><br>**Reason(s) for Redactions:** The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E) |
| 19701-19702 | Partial | **Document Title**: Email titled "Amity Arrest 09/09/2017"<br><br>**Reason(s) for Redactions: Document Description:** These are emails between an ICE ERO DO to the other DOs that will be assisting on a courthouse arrest. The email details the plan for the arrest and is meant to coordinate actions within the team. All emails concern the same third-party individual and include their immigration and criminal history. | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E) |

| | | | |
|---|---|---|---|
| | | **Redacted Information:** These emails are withheld in part pursuant to FOIA Exemption (b)(7)(E). ICE would like to withdraw the (b)(5) designation.<br><br>**Reason(s) for Redactions:** The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. In this case, the officer is detailing the information that has been gathered via research and surveillance, which in turn has determined the arrest plan. The information redacted is limited to specific information (such as where officers will meet, why they are meeting at that spot, what they are wearing, and what radio channel they should tune into) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 19703-19705 | Partial | **Document Title**: Email titled "Arrest at WA Co. Court"<br><br>**Document Description:** These are emails between an ICE ERO DO and their AFOD asking permission to conduct a courthouse arrest. Supervisor permission is required to conduct a courthouse arrest. All emails concern the same third-party individual and include their immigration and criminal history.<br><br>**Redacted Information:** These emails are withheld in part pursuant to FOIA Exemption (b)(7)(E). ICE would also like to assert FOIA Exemption (b)(5).<br><br>**Reason(s) for Redactions:**<br><br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct a courthouse arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location. These plans contain a recommendation for agency action based on information known to ERO at the time. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | | |
|---|---|---|---|
| | | applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)  Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.

FOIA Exemptions (b)(7)(E):
The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States.  Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents.  ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 19706-19707 | Partial | **Document Title**:  Email titled "Clark county courthouse arrest 4/20 [A-number]"

**Document Description:** These are emails between an ICE ERO DO and their AFOD asking permission to conduct a courthouse arrest, then an email to the other DOs that will be assisting on a courthouse arrest. The email details the plan for the arrest and is meant to coordinate actions within the team.  All emails concern the same third-party individual and include their immigration and criminal history. | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemptions (b)(5) and (b)(7)(E).

**Reason(s) for Redactions:**
FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct a courthouse arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location. These plans contain a recommendation for agency action based on information known to ERO at the time. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.) Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.

FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement

| | | |
|---|---|---|
| | | operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 20798-20799 | Partial | **Document Title**: Emailed titled "RE: Court list"<br><br>**Document Description:** The only redacted information in this email are the "To" and "CC" lines of the email, as well as third-party individual names.<br><br>**Redacted Information:** Names and email addresses are withheld in part pursuant to FOIA Exemption (b)(6) and (b)(7)(C).<br><br>**Reason(s) for Redactions:** Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names and contact information of ICE and law enforcement personnel could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>Similarly, under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names, biometric information, contact information, immigration history, and/or other identifying information of third-party individuals could reasonably be expected to constitute an unwarranted invasion of these individuals' personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII. | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |

| | | | |
|---|---|---|---|
| 20808-20809 | Partial | **Document Title**: Email titled "Spring Updates"<br><br>**Document Description**: This is an update email from the ERO EAD to all ERO personnel, and address concerns and agency progress on policies, actions, and operations. This email addresses topics that range from sanctuary cities to courthouse arrests to new detainer forms.<br><br>**Redacted Information**: The pages are withheld in part pursuant to FOIA Exemptions (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions**:<br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from the highest ranking ERO employee to all ERO employees giving instructions, updating information, reminding employees of certain procedures, and discussing possible policy changes. The email requests employee input on certain areas. This email does not announce new policies; it is solely intended to keep all of ERO coordinated and informed. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.<br><br>FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of why and exactly how ICE ERO conducts operational activities (in sanctuary cities, in sensitive locations, etc.) would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. This information could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | | |
|---|---|---|---|
| 20953-20955 | Partial | **Document Title**: Untitled<br><br>**Document Description:** This is a narrative from an ERO DO regarding an administrative arrest at or near the Multnomah County Justice Center on January 27, 2017, told in their own words based on their own experience. While attempting to conduct an arrest at the courthouse, the subject that ERO was seeking was aided in exiting the courthouse to avoid ERO.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemption (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This ERO DO wrote a short narrative containing their recollections and opinions about what occurred, presumably for their management. FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)<br><br>FOIA exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
|---|---|---|---|
| 21771, 21940 | Partial | **Document Title**: Untitled<br><br>**Document Description:** This is a public photo of a third-party individual. It appears to be a screenshot of Facebook.<br><br>**Redacted Information:** These emails are withheld in part pursuant to FOIA Exemptions (b)(6) and (b)(7)(C).<br><br>**Reason(s) for Redactions:** Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names and photos, and/or other identifying information of third-party individuals could reasonably be expected to constitute an unwarranted invasion of these individuals' personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII. | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |
| 21935-21938 | Partial | **Document Title**: Unreadable email titles<br><br>**Document Description:** This are a series of duplicate emails, which are unreadable because the text is too light. However, a screenshot from the ICE ERO database, the ENFORCE Alien Removal Module ("EARM"), is included in the emails. It contains the information that ICE has collected regarding a third-party individual, such as a mugshot, relevant immigration history, etc. More information about EARM can be found at https://www.dhs.gov/publication/dhsicepia-015h-enforcement-integrated-database-eid-criminal-history-information-sharing.<br><br>**Redacted Information:** The EARM printout is withheld pursuant to FOIA Exemption (b)(7)(E). | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E) |

| | | | |
|---|---|---|---|
| | | **Reason(s) for Redactions:** The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. FOIA Exemption (b)(7)(E) exempts from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of this type of information could permit people seeking to interfere with law enforcement investigations and/or operations to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The release of how much ICE may know about third-party individuals could reveal techniques and/or procedures for law enforcement investigations or prosecutions or disclose guidelines for law enforcement investigations or operations which could reasonably be expected to risk circumvention of the law; in this case. Revealing the exact codes or URLs of EARM could assist those people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ICE during enforcement operations by hacking into the system and altering or changing information about themselves or others. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 22198-22199 | Partial | **Document Title**: Email titled "FW: Multnomah County Courthouse"<br><br>**Document Description:** This is a short email account from an ERO DO regarding an administrative arrest at or near the Multnomah County Circuit Court on or near March 30, 2017, told in their own words based on their own experience. While attempting to conduct an arrest at the courthouse, the ERO officers were confronted by a public defender in the courthouse. This is same incident outlined at pages Bates stamped 15803-15805, 15806-15808, and 20935-20937.<br><br>**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemption (b)(5) and (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br><br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. The AFOD of ERO-Seattle requested that any ERO officer present for the administrative arrest in late March should write a personal narrative about the incident and submit the narrative for personnel record reasons. The ERO officers then wrote short narratives containing their recollections and opinions about what occurred. FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)<br><br>**FOIA exemptions (b)(7)(E):** The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| --- | --- | --- | --- |
| 22229-22231 | Full | **Document Title**: Untitled<br><br>**Document Description:** These are photos of a juvenile's injuries, as per the police report on pages Bates stamped 2227-22228, and a mugshot of the individual who is being charged with inflicting the injuries.<br><br>**Redacted Information:** These photos were withheld pursuant to FOIA Exemptions (b)(6), (b(7)(C), and (b)(7)(E). ICE would like to withdraw the (b)(7)(E) redaction on the mugshot only. | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C), (b)(7)(E) |

| | | **Reason(s) for Redactions:** | |
|---|---|---|---|
| | | FOIA Exemptions (b)(6) and (b)(7)(C): Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of PII of third-party individuals could reasonably be expected to constitute an unwarranted invasion of these individuals' personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.  Finally, the third parties identified in the records have not consented to the disclosure of their PII.

FOIA Exemption (b)(7)(E):  The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because (1) these photos belong to a police investigation, and show how injuries are documented for potential trials and charges, and (2) the pages contain LES codes that are associated with juvenile victims.  This information could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions regarding assault and/or child abuse, and/or accessing local LE databases and altering information. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 34065-34066 | Partial | **Document Title**: Email titled "Multnomah Attempted Arrest"

**Document Description:**  This is a narrative from an ERO DO regarding an administrative arrest at or near the Multnomah County Courthouse on March 10, 2017, told in their own words based on their own experience.  While attempting to conduct an arrest at the courthouse, ERO was filmed by bystanders and thus abandoned the arrest attempt.

**Redacted Information:** The pages are withheld in part pursuant to FOIA Exemption (b)(5) and (b)(7)(E). | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| | | **Reason(s) for Redactions:** | |
|---|---|---|---|
| | | **FOIA Exemptions (b)(5):** The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This ERO DO wrote a short narrative containing their recollections and opinions about what occurred, presumably for their management. FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)<br><br>**FOIA exemptions (b)(7)(E):** The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 34250 | Partial | **Document Title**: Email titled "RE: Multnomah Court House Arrest 5/3/17"<br><br>**Document Description:** These are emails between an ICE ERO DO and their AFOD asking permission to conduct a courthouse arrest. Supervisor permission is required to conduct a courthouse arrest. All emails | Freedom of Information Act 5 U.S.C. § |

| | | concern the same third-party individual and include their immigration and criminal history. | 552 (b)(7)(E) |
| | | | |
| | | **Redacted Information:** These emails are withheld in part pursuant to FOIA Exemption (b)(7)(E).   ICE would also like to assert FOIA Exemption (b)(5). | |
| | | | |
| | | **Reason(s) for Redactions:** | |
| | | | |
| | | <u>FOIA Exemptions (b)(5):</u> The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative.  This email from an ERO officer to his ERO supervisors lays out (1) the reasons underlying the decision to conduct a courthouse arrest and (2) a specific plan for how to safely and discretely effectuate an ICE arrest in such a sensitive location.  These plans contain a recommendation for agency action based on information known to ERO at the time.   Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of ERO's descriptions of the case and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's right to internal deliberations.)  Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency. | |
| | | | |
| | | <u>FOIA Exemptions (b)(7)(E):</u> The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive.  This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States.  Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents.  ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the | |

| | | | |
|---|---|---|---|
| | | information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 34292-34294 | Full | **Document Title**: ICE Health Services Corps (IHSC) – Quality of Care Assessment - ICE Uniform Corrective Action Plan (FMC Site Visit August 2015)<br><br>**Document Description:** As detailed at https://www.ice.gov/features/health-service-corps, the IHSC routinely and constantly perform reviews of the health care being provided to detainees in the United States.  This is a draft Corrective Action Plan, created after a review at NORCOR (see pages Bates stamped 1558-1574 for an email pertaining to this review), that lays out IHSC's plans for improving offered care.  This Corrective Action Plan is in draft form, as evidenced by the redline edits, comment balloons requesting further edits and/or clarifications, and other edits that exist on every page.<br><br>**Redacted Information:** These emails are withheld in part pursuant to FOIA Exemption (b)(5).<br><br>**Reason(s) for Redactions:**  The information in these pages is properly withheld under FOIA Exemption (b)(5) because it is draft, pre-decisional, and deliberative.  It is a deliberative draft document from ICE employees related to healthcare provided by IHSC to ICE detainees.  In this instance, the document is subject to edits by other ICE employees – in fact, the document contains redline edits and comment bubbles on every page from ICE employees.  FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these documents.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| | | | |
|---|---|---|---|
| CHALLENGED RECORDS (FOIA EXEMPTION (B)(5))[8] | | | |
| 1386-1388 | Partial | **Document Title**: 2019-ICFO-03359 – Task to SEA<br><br>**Document Description:** This is a tracking sheet used by the Seattle ERO office to track its response to the Plaintiff's original FOIA.  It should have been labeled non-responsive, as it does not directly answer the Plaintiff's FOIA, and is an internal-use only document.  However, for the sake of expediency in this litigation, the redactions have been reduced to shed light on the document's content.<br><br>**Redacted Information:**  Portions of the document were withheld pursuant  to FOIA Exemption (b)(5).<br><br>**Reason(s) for Redactions:**  The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative.  This emails between ERO personnel contain their thoughts and opinions on how to answer a FOIA request and include ideas on how to respond and/or the capabilities and limitations of information in ICE's databases.  The emails contain candid statements and opinions and suggest future actions and statements.   Such pre-decisional and deliberative exchanges between employees about these matters are expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |
| 1408-1409 | Partial | **Document Title**: Email titled "Communication with Detainees Regarding the Injunction on Removals to Iraq in *Hamama v. Adducci*"<br><br>**Document Description:** This is an email from the Assistant Director for Field Operations, a division of ERO.  The email outlines a recent injunction against removals to Iraq and then lays out how ERO should handle any inquiries about the case in the immediate aftermath.  The information is specifically legal in nature, requiring ERO personnel to take specific actions to particular inquiries from Iraqi detainees.  It requests certain information be forwarded to ICE's legal division, the Office of the Principal Legal | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

---

[8] Please note that pages Bates stamped 1386-1388, 1398, 1619, 1823-1824, and 1832-1833 had their FOIA Exemption (b)(5) redactions withdrawn completely or scaled back.  The reprocessed pages were released to Plaintiff prior to this filing.

| | | Advisor ("OPLA"). The email was forwarded on September 11, 2017; the date of the original email is unknown.

**Redacted Information:** The sections about what actions ERO officers should take in response to injunction-based questions from detainees (such as requests to be excluded from the class) were withheld pursuant to FOIA Exemption (b)(5).

**Reason(s) for Redactions:** These 4 paragraphs were properly withheld under FOIA exemption (b)(5) because it is attorney-client privileged. This document from OPLA, through ERO leadership, to their client ERO about what to do in the immediate aftermath of a court injunction. The email states OPLA's opinions and guidance to ERO, and states that more information will come as OPLA develops more guidance for the field. This information is direct advice to the client and does not contain any information about ICE's position in the legal case or its agency policy. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his or her legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel. | |
|---|---|---|---|
| 1823-1824 | Partial | **Document Title**: Email titled "Operation Near Courthouse"

**Document Description:** This is a series of emails from a DO to an AFOD requesting approval to conduct courthouse arrests. The emails contain information about the arrest subjects, ERO's plan for arrests, and their opinions on a particular case. The redactions have been further segregated and re-released to Plaintiff.

**Redacted Information:** The names and/or contact information of ICE employees and the third-party individual were withheld pursuant to FOIA exemptions (b)(6) and (b)(7)(C). The opinions and questions posed by a DO to his supervisors were withheld pursuant to FOIA exemption (b)(5). ICE would also like to assert FOIA Exemption (b)(7)(E), along with (b)(5).

**Reason(s) for Redactions:**
FOIA Exemptions (b)(6) and (b)(7)(C): Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names and contact information of ICE personnel could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C), (b)(7)(E) |

annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.

Similarly, under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of PII of third-party individuals could reasonably be expected to constitute an unwarranted invasion of these individuals' personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII.

FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from the DO to his supervisor lays out his opinions and questions regarding a potential courthouse arrest. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.

FOIA exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly what constitutes an IFI and how that factors into what actions ICE would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way

| | | |
|---|---|---|
| | | to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 9820-9822 | Partial | **Document Title**: Email titled "[ACLU filming ICE officers during arrest 5/22/2018] FW: FOW for 5/22/2017"<br><br>**Document Description:** This email chain begins with an FOW for a courthouse arrest on May 22, 2017, plus follow-up emails about the status of the arrest. A DO sent a short narrative to a supervisor describing an encounter with ACLU legal observers while effectuating the arrest. The narrative contains the officer's recollections, impressions, and characterizations of the encounter, and requests the supervisor's input on next steps and direction.<br><br>**Redacted Information:** The names and/or contact information of ICE employees and the third-party individual were withheld pursuant to FOIA exemptions (b)(6) and (b)(7)(C). The narrative by the DO to his supervisor was withheld pursuant to FOIA exemption (b)(5). One sentence about the arrest plan was withheld under (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(6) and (b)(7)(C): Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names and contact information of ICE personnel could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>Similarly, under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of PII of third-party individuals | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C), (b)(7)(E) |

could reasonably be expected to constitute an unwarranted invasion of these individuals' personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII.

FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from the DO to his supervisor lays out recollections, impressions, and characterizations of an encounter with oppositional members of the ACLU, and requests input from his supervisor on next steps and direction. Such pre-decisional and deliberative exchange between employees is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.

FOIA exemption (b)(7)(E): The sentence concerning the arrest plan was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of exactly how ICE plans and conducts courthouse arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will do before and after the arrest) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this

| | | | |
|---|---|---|---|
| | | information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 9928-9939 | Partial | **Document Title**: Email titled "RE: Statement by Multnomah County"<br><br>**Document Description:**  This email chain was sparked by an email from a local news station in Portland, Oregon that asked the ICE Western Regional Communications Director for information on ERO operational activities.  The subsequent emails involve conversations between the news station and ICE personnel clarifying the statements, and then conversations between ERO personnel about the wording of a public statement from ICE that contain the employees' thoughts, opinions, and ideas for editing the statement.<br><br>**Redacted Information:**  The names and/or contact information of ICE employees and the third-party individual were withheld pursuant to FOIA exemptions (b)(6) and (b)(7)(C).  The discussions between ERO personnel about the public statement and its accuracy were withheld pursuant to FOIA exemption (b)(5).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(6) and (b)(7)(C): Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names and contact information of ICE personnel could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of  law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.  As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>Similarly, under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of PII of third-party individuals could reasonably be expected to constitute an unwarranted invasion of these individuals' personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public.  The disclosure of this PII serves no public benefit and would not assist the public in understanding | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C) |

| | | how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII.<br><br>FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This emails between ERO personnel contain their thoughts and opinions on proposed public statement and on the accuracy of statements made by local law enforcement and the ACLU's allegations; their thoughts, opinions, and ideas for editing any public statement for ICE; and what information should be released with the statement. The emails contain candid statements and opinions and suggest future actions and statements. Such pre-decisional and deliberative exchanges between employees about these matters are expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. | |
| --- | --- | --- | --- |
| 14585, 19588-19591 | Partial | **Document Title**: Email titled "RE: At/Near Courthouse Arrests Data Call – Due 3/23 at 1400 PST"<br><br>**Document Description:** These emails originate from a request for data concerning courthouse arrests from a senior leader in ERO; the data requested as an approximate percentage of total arrests made near courthouses fort a particular timeframe. The subsequent replies give statistics to the original email.<br><br>**Redacted Information:** The names and/or contact information of ICE employees were withheld pursuant to FOIA exemptions (b)(6) and (b)(7)(C). One paragraph explaining the data call information sought and intent of the data call was withheld pursuant to FOIA exemption (b)(5).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(6) and (b)(7)(C): Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names and contact information of ICE personnel could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C) |

| | | agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.

FOIA Exemptions (b)(5): The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email from an ERO senior leader to field offices requests certain data and explains how to report the data, then expresses the employee's thoughts and intent behind the data request and how the data will be used and disseminated
. Such pre-decisional and deliberative exchanges between employees about these matters are expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. | |

| **CHALLENGED RECORDS (FOIA EXEMPTION (B)(7)(A))**[9] | | | |

| 201 | Full | **Document Title**: Untitled (copy of driver's license)

**Document Description:** This is a copy of the front of someone's Oregon driver license.

**Redacted Information:** This document was withheld under FOIA Exemption (7)(A), as it is an ongoing investigation.  The PII of the third party was withheld pursuant to FOIA exemptions (b)(6) and (b)(7)(C).

**Reason(s) for Redactions:**
FOIA Exemptions (b)(6) and (b)(7)(C): Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of PII of third-party individuals could reasonably be expected to constitute an unwarranted invasion of these individuals' personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(A), (b)(6), (b)(7)(C) |

---

[9] Please note that pages Bates stamped 1-2, 800-802, 1001, and 1300-1301 had their FOIA Exemption (7)(A) redactions withdrawn and were reprocessed as the case is no longer ongoing; the pages were released to Plaintiff prior to this filing.

| | | disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII.

FOIA Exemption (b)(7)(A): This exemption protects from disclosure records or information compiled for law enforcement purposes, the release of which could reasonably be expected to interfere with enforcement proceedings. This document contains information pertinent to ongoing ERO operational investigations into aliens lacking legal status in the U.S. Any information ab out the subjects, if disclosed, could reasonably be expected to interfere with LE proceedings. Please be advised that even if all pending matters are resolved and FOIA Exemption 7(A) is no longer applicable, other exemptions could protect the information from disclosure, such as FOIA Exemptions (b)(6) and (b)(7)(C). | |
|---|---|---|---|
| 391-411 | Full | **Document Title**: Gresham Police Department - Official Police Release

**Document Description:** This is a police report from Gresham Police Department about an individual incident; it includes a cover letter about the arrestee and narrative of the crime, a property in custody receipt, an Alcohol Influence Report, and Implied Consent Combined Report, An Intoxilyzer 80000 Operator's Checklist from the Oregon State Police Forensic Services Division, A Breathe Test Report, an Oregon Uniform Citation and Complaint, and a Follow-up Report. It was presumably transmitted to ICE from the Gresham Police Department.

**Redacted Information:** This document was withheld under FOIA Exemption (7)(A). The PII of ICE employees and the third-party individual were withheld pursuant to FOIA exemptions (b)(6) and (b)(7)(C).

**Reason(s) for Redactions:**
FOIA Exemptions (b)(6) and (b)(7)(C): Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names and contact information of ICE personnel could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.

Similarly, under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of PII of third-party individuals | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(A), (b)(6), (b)(7)(C) |

| | | could reasonably be expected to constitute an unwarranted invasion of these individuals' personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII.<br><br>FOIA Exemption (b)(7)(A): This protects from disclosure records or information compiled for law enforcement purposes, the release of which could reasonably be expected to interfere with enforcement proceedings. This police release contains information pertinent to ongoing ERO operational investigations into aliens lacking legal status in the U.S., an contains narratives about the individual sought that could reveal his/her identity. Any information ab out the subjects, if disclosed, could reasonably be expected to interfere with LE proceedings. Please be advised that even if all pending matters are resolved and FOIA Exemption 7(A) is no longer applicable, other exemptions could protect the information from disclosure, such as FOIA Exemptions (b)(6), (b)(7)(C), and (b)(7)(E). | |
| --- | --- | --- | --- |
| 601 | Full | **Document Title**: Email titled "RE: Request for Arrest or Investigative Report"<br><br>**Document Description:** This is an email from a DO to "Files, Police Bureau" (email address not known or displayed) asking for an arrest or investigative report for a particular case/individual. The email chain refers the DO to another county's police division.<br><br>**Redacted Information:** This document was withheld under FOIA Exemption (7)(A).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(6) and (b)(7)(C): Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names and contact information of ICE personnel could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(A), (b)(6), (b)(7)(C) |

<table>
<tr><td></td><td></td><td>agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.

Similarly, under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of PII of third-party individuals could reasonably be expected to constitute an unwarranted invasion of these individuals' personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII.

<u>FOIA Exemption (b)(7)(A):</u> This protects from disclosure records or information compiled for law enforcement purposes, the release of which could reasonably be expected to interfere with enforcement proceedings. This email contains information pertinent to ongoing ERO operational investigations into aliens lacking legal status in the U.S., an contains narratives about the individual sought that could reveal his/her identity. Any information ab out the subjects, if disclosed, could reasonably be expected to interfere with LE proceedings. Please be advised that even if all pending matters are resolved and FOIA Exemption 7(A) is no longer applicable, other exemptions could protect the information from disclosure, such as FOIA Exemptions (b)(6), (b)(7)(C), and (b)(7)(E).</td><td></td></tr>
<tr><td>1198-1201</td><td>Full</td><td>**Document Title**: Email titled "RE: Emailing: CLASSweb Jail Inmate Summary.htm"

**Document Description:** This is a printout sent from a Sergeant at the Clackamas County Sheriff's Office - Jail to 2 ICE employees about a person in Oregon custody. The sheet includes the individual's name, PII, and such information as arrest location and charges. (Similar printouts to this one exist throughout the productions that ICE sent to Plaintiff.)

**Redacted Information:** This document was withheld under FOIA Exemption (7)(A). The PII of ICE employees and the third-party individual were withheld pursuant to FOIA exemptions (b)(6) and (b)(7)(C).

**Reason(s) for Redactions:**</td><td>Freedom of Information Act 5 U.S.C. § 552 (b)(7)(A), (b)(6), (b)(7)(C)</td></tr>
</table>

FOIA Exemptions (b)(6) and (b)(7)(C): Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names and contact information of ICE personnel could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.

Similarly, under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of PII of third-party individuals could reasonably be expected to constitute an unwarranted invasion of these individuals' personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII.

FOIA Exemption (b)(7)(A): This protects from disclosure records or information compiled for law enforcement purposes, the release of which could reasonably be expected to interfere with enforcement proceedings. This email contains information pertinent to ongoing ERO operational investigations into aliens lacking legal status in the U.S., an contains narratives about the individual sought that could reveal his/her identity. Any information ab out the subjects, if disclosed, could reasonably be expected to interfere with LE proceedings. Please be advised that even if all pending matters are resolved and FOIA Exemption 7(A) is no longer applicable, other exemptions could protect the information from disclosure, such as FOIA Exemptions (b)(6), (b)(7)(C), and (b)(7)(E).

| CHALLENGED RECORDS (FOIA EXEMPTION (B)(7)(E))[10] | | | |
|---|---|---|---|
| 9186-9187 | Partial | **Document Title**: Email titled "RE: Court approval for [A-number]"<br><br>**Document Description:** The original email is from a DO to a Supervisory Detention and Deportation Officer ("SDDO") requesting approval to conduct courthouse arrests. The SDDO's reply email provides approval and specific guidance for the arrest. The emails contain information about ERO's plan for the arrest.<br><br>**Redacted Information:** The names and/or contact information of ICE employees and the third-party individual were withheld pursuant to FOIA exemptions (b)(6) and (b)(7)(C). The three sentences regarding the exact arrest plan were withheld pursuant to FOIA exemption (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(6) and (b)(7)(C): Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names and contact information of ICE personnel could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>Similarly, under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of PII of third-party individuals could reasonably be expected to constitute an unwarranted invasion of these individuals' personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C), (b)(7)(E) |

---

[10] Please note that the page Bates stamped 14685 had FOIA exemptions scaled back and released to Plaintiff prior to this filing.

| | | any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII.<br><br>FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Here, Exemption (b)(7)(E) is asserted because the three sentences withheld discuss where and why ICE plans to conduct this particular courthouse arrest, the release of which would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 9526-9528 | Partial | **Document Title**: Email titled "RE: Request to arrest after court"<br><br>**Document Description:** The original email is from a DO to a SDDO requesting approval to conduct courthouse arrests. The SDDO's reply email provides approval and specific guidance for the arrest. The emails contain information about ERO's plan for the arrest.<br><br>**Redacted Information:** The names and/or contact information of ICE employees and the third-party individual were withheld pursuant to FOIA exemptions (b)(6) and (b)(7)(C). The three sentences regarding the exact arrest plan were withheld pursuant to FOIA exemption (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(6) and (b)(7)(C): Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names and contact information of ICE personnel could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C), (b)(7)(E) |

danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.

Similarly, under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of PII of third-party individuals could reasonably be expected to constitute an unwarranted invasion of these individuals' personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, embarrassment, economic reprisals, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII.

FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Here, Exemption (b)(7)(E) is asserted because the three sentences withheld discuss where and why ICE plans to conduct this particular courthouse arrest, the release of which would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.

| | | **Document Title**: Email titled "RE: Request for Court House Approval" | |
|---|---|---|---|
| 9611 | Partial | **Document Description:** The original email is from a DO to a SDDO requesting approval to conduct courthouse arrests. The SDDO's reply email provides approval and specific guidance for the arrest. The emails contain information about ERO's plan for the arrest.<br><br>**Redacted Information:** The names and/or contact information of ICE employees and the third-party individual were withheld pursuant to FOIA exemptions (b)(6) and (b)(7)(C). One and a half sentences regarding the exact arrest plan were withheld pursuant to FOIA exemption (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(6) and (b)(7)(C): Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names and contact information of ICE personnel could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>Similarly, under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of PII of third-party individuals could reasonably be expected to constitute an unwarranted invasion of these individuals' personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII.<br><br>FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C), (b)(7)(E) |

| | | | |
|---|---|---|---|
| | | reasonably be expected to risk circumvention of the law.  Here, Exemption (b)(7)(E) is asserted because the 1.5 sentences in question discuss where and why ICE plans to conduct this particular courthouse arrest, the release of which would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States.  Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents.  ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 9616 | Partial | **Document Title**: Email titled "RE: Request for Court House Authorization"<br><br>**Document Description:** The original email is from a DO to a SDDO requesting approval to conduct courthouse arrests.  The SDDO's reply email provides approval and specific guidance for the arrest.  The emails contain information about ERO's plan for the arrest.<br><br>**Redacted Information:**  The names and/or contact information of ICE employees and the third-party individual were withheld pursuant to FOIA exemptions (b)(6) and (b)(7)(C).  One and a half sentences regarding the exact arrest plan were withheld pursuant to FOIA exemption (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(6) and (b)(7)(C): Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names and contact information of ICE personnel could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of  law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.  As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C), (b)(7)(E) |

| | | Similarly, under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of PII of third-party individuals could reasonably be expected to constitute an unwarranted invasion of these individuals' personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII.<br><br>FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Here, Exemption (b)(7)(E) is asserted because the 1.5 sentences in question discuss where and why ICE plans to conduct this particular courthouse arrest, the release of which would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. Courthouse arrests are only used when ICE has ascertained that it is the best way to effectuate a civil immigration enforcement actions while reducing safety risks to the public, targeted alien(s), and ICE officers and agents. ICE has released extensive information at https://www.ice.gov/ero/enforcement/sensitive-loc regarding these arrests; the information redacted in these sections is limited to specific information (such as what officers will be wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 14685 | Partial | **Document Title**: Email titled "[A-number, Name]"<br><br>**Document Description:** The original email is from a DO to a team of ERO officers about two upcoming arrests (note: these arrests are not taking place at a courthouse). The email details the plans for the arrests that include law enforcement sensitive information such as operational preparations before the arrest and when and where the team meets before arrests. | Freedom of Information Act 5 U.S.C. § 552 (b)(6), |

| | | **Redacted Information:** The names and/or contact information of ICE employees and the third-party individual were withheld pursuant to FOIA exemptions (b)(6) and (b)(7)(C). The operational plans happening before the arrest were withheld pursuant to FOIA exemption (b)(7)(E).<br><br>**Reason(s) for Redactions:**<br>FOIA Exemptions (b)(6) and (b)(7)(C): Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names and contact information of ICE personnel could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>Similarly, under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of PII of third-party individuals could reasonably be expected to constitute an unwarranted invasion of these individuals' personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII.<br><br>FOIA Exemptions (b)(7)(E): The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is extremely law enforcement sensitive. This Exemption protects from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Here, Exemption (b)(7)(E) is asserted because disclosure of the preparations done in advance of, and the exact location and time where ERO personnel meet before, going out to effectuate administrative arrests would disclose law enforcement techniques and procedures used by federal officers who are acting pursuant to duly enacted laws passed by Congress that provide the authority to make administrative arrests of removable aliens inside the United States. The information redacted in these sections is limited to specific information (such as what officers will be | (b)(7)(C), (b)(7)(E) |

| | | wearing and who they have coordinated with beforehand) that could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |